## Case No. 15,556.
### UNITED STATES v. LANCASTER.
[2 McLean, 431.] [1]

Circuit Court. D. Illinois. June Term, 1841.

FEDERAL CRIMINAL JURISDICTION — OFFENCES UNDER POSTAL LAWS — EMBEZZLEMENT — EVIDENCE—INDICTMENT—STATUTORY WORDS.

1. The federal government has no criminal jurisdiction except what is given by statute.
[Cited in U. S. v. New Bedford Bridge, Case No. 15,867; U. S. v. Coppersmith, 4 Fed. 205; U. S. v. Gibson, 47 Fed. 834; U. S. v. Mitchell, 58 Fed. 997.]

2. An offence described in the words of the statute is, generally, sufficient.
[Cited in U. S. v. O'Sullivan, Case No. 15,-974; U. S. v. Patterson, Id. 16,011; U. S. v. Sander, Id. 16,219; U. S. v. Ballard, Id. 14,506; U. S. v. Atkinson, 34 Fed. 317.]
[Cited in Buck v. State, 1 Ohio St. 64; State v. Abbott, 31 N. H. 439. Cited in brief in State v. Smith, 63 Vt. 205, 22 Atl. 604.]

3. Offences under the postoffice law are not felonies. They are misdemeanors; and, in such cases, less nicety in the form is required, than in indictments for felonies in England.
[Cited in U. S. v. Baugh, 1 Fed. 787.]

4. It is not necessary to give a particular description of a letter charged to have been secreted and embezzled by a postmaster, nor to describe the bank notes, particularly, inclosed in the letter.
[Cited in U. S. v. Falkenhainer, 21 Fed. 627.]

5. But if either the letter or the notes be described in the indictment, they must be proved as laid.
[Cited in U. S. v. Fuller (N. M.) 20 Pac. 177.]

6. It is enough to show that the letter came into the hands of the postmaster, in the words of the statute, without showing where it was mailed, and on what route it was conveyed.
[Cited in U. S. v. Fuller (N. M.) 20 Pac. 179.]

7. The evidence of an accomplice is competent, but it should always be received with caution.

Mr. Butterfield. U. S. Dist. Atty.
Baker, Lamburn & Dunbar, for defendant.

OPINION OF THE COURT. This is an indictment against the defendant for stealing letters containing money from the mail, while he acted as postmaster, at Carrolton, in this state. The indictment contained six ·counts. And a motion was made, and argued at length, to quash the second, fourth, fifth and

1 [Reported by Hon. John McLean, Circuit Justice.]

sixth counts. The second count charged that, within the district aforesaid, the said Charles Lancaster did then and there secrete and embezzle one letter which came to his possession, and was intended to be conveyed by post, containing divers bank notes for the payment of money, he, the said Charles Lancaster, being, at the time of such secreting and embezzling as aforesaid, then and there employed in one of the departments of the postoffice establishment, to wit: A postmaster at Carrolton, in the county of Greene, in the state and district aforesaid. This count is framed under the twenty-first section of the act of March 3, 1825, to punish offences against the postoffice regulations, which provides that if any person, employed in any of the departments of the postoffice establishment, shall secrete, embezzle, or destroy, any letter, packet, bag, or mail of letters, with which he or they shall be intrusted, or which shall have come to his or her possession, and are intended to be conveyed by post, containing any bank note, or bank post bill, &c., such person shall, on conviction for any such offence, be imprisoned not less than ten years, nor exceeding twenty one years.

It is objected to this count: First, that the charge of embezzling the letter is not specific; second, that the bank notes are not described; third, no crime charged; fourth, no averment that defendant did the act at Carrolton; fifth, a conviction on this count could not be pleaded in bar to a charge of embezzling a specific letter, &c.

The federal government has no jurisdiction of offences at common law. Even in civil cases the federal government follows the rule of the common law as adopted by the states, respectively. It can exercise no criminal jurisdiction which is not given by statute, nor punish any act, criminally, except as the statute provides. The offences defined in the postoffice law are misdemeanors and not felonies. The statute does not declare them to be felonies, and, by the federal government, they are only punishable under the statute. In describing an offence under the statute no technical words are necessary as in many common law offences. In the case of U. S. v. Mills, 7 Pet. [32 U. S.] 142, the court say: "The general rule is, that in indictments for misdemeanors created by statute, it is sufficient to charge the offence in the words of the statute. There is not that technical nicety required as to form which seems to have been adopted and sanctioned by long practice in cases of felony." In an indictment for murder no word can be substituted for murdravit; in burglary, for burglariously, &c.

The second count charges the offence in the words of the statute. And the defendant is shown to have been employed, at the time the act was done, in the postoffice department. Is it essential that the letter, charged to have been embezzled, should be described by stating to whom it was directed, and by whom it was written. This description is generally given where it is practicable. But it is seldom in the power of the prosecuting attorney to state these facts, much less to prove them. A postmaster, or carrier, after having stolen a letter from the mail, will not be likely to preserve it as the evidence of his guilt. Where the act is done deliberately, as may be presumed to be the case, generally, when done by a postmaster, there is not one instance in a thousand, perhaps, where the letter is not destroyed. And if a particular description of it be essential to the validity of the indictment, a conviction under this, or any other similar provision of the act, would be hopeless. Where a letter is thrown into the mail to decoy a postmaster, by an agent of the department, who opens and examines the mail immediately after it leaves the office, the letter may be described with the certainty required by the counsel; but such certainty could not be obtained in any other case where the violated letter was not recovered. The security of individuals does not seem to demand this particular description of the letter; and to require it would, in most instances, defeat the great purposes of justice.

The case of U. S. v. Mills, above cited, was brought before the supreme court by a division of opinion of the judges of the circuit court, on a motion in arrest of judgment. There were two counts in the indictment. The first count charged that the defendant at, &c., did procure, advise, and assist —— to secrete, embezzle, and destroy a mail of letters with which the said —— was intrusted, and which had come to his possession, and was intended to be conveyed, by post, from Pittsburg, in the district aforesaid, to Fayetteville; also, in said district, containing bank notes, &c. The second count was framed in the same words as above, excepting the writer of the letter, and the person, to whom it was directed, were stated, adding after the words, "bank notes, amounting, in the whole, to sixty dollars, of a description, to the jurors aforesaid, unknown, and of the issue of a bank to the said jurors, also, unknown," &c. The court say: "The second count in the indictment sets out the particular letter secreted, embezzled, and destroyed, containing bank notes amounting to sixty dollars." And they remark, the offence here set out against ——, the mail carrier, is substantially in the words of the statute, repeating the words above cited. The court do not pronounce either count defective, but say the charge is set out with sufficient certainty to authorize a judgment. The main point was, whether the guilt of the principal was sufficiently averred to convict the defendant, for having advised and procured him to do the act.

By the English postoffice act the stealing of a letter from the mail, by a person employed by the postoffice, is made a high misdemeanor, and is punished by fine or im-

prisonment. And an indictment there for that offence describes the letter as "a post letter." The person to whom it was directed, or by whom it was written, is not stated; nor the place where mailed, or to which it was destined, nor the route on which it was to be conveyed. It is stated to be the property, and, also, its contents, of the postmaster general, but this is in virtue of an act of parliament of 7 Wm. IV. and 1 Vict. c. 36, § 40. It is insisted that this count does not show that the letter was, in fact, in the mail. It is enough that the letter is charged "to have come to the possession of the defendant, and was intended to be conveyed by post," in the words of the statute.

Is it necessary, particularly, to describe the bank notes. This in some cases may be practicable, but in most cases it is not. In the first count of the indictment against Mills the notes were not described. Nor were they described in the second count, except as amounting to sixty dollars. They were represented to have been issued by a bank unknown to the jurors, and of a description unknown. In an indictment for larceny, it is essential to the validity of the charge, that the name of the owner of the property should be stated. And if the fact of ownership be mistaken, it is ground for the acquittal of the defendant. As before remarked, by statute in England, the property of the bank notes, or other articles contained in a letter stolen from the mail, is laid in the postmaster general. But this, it is presumed, could not have been done before the statute. Why is it necessary that the property in these notes should be laid in any person in the indictment? It is difficult to perceive any good reason for this form. Under our statute it is believed not to have been done generally, if at all. The taking of these notes does not constitute the principal offence. It adds greatly to the enormity of the act, and increases the punishment. But the main offence is the violation of the sanctity of the mail, by an individual who had sworn to protect it.

In 1 Chit. 698, it is laid down, that where the offence can not be stated with complete certainty, it is sufficient to state it with such certainty as it is capable of. As in the case of a conspiracy to defraud a person of goods, it is not necessary to describe the goods as in an indictment for stealing them; stating them as "divers goods," has been holden sufficient. Pursuing the words in the statute is sufficient, in describing an offence, unless there are generic terms, in which case it is necessary to state the species, according to the truth of the case. Archb. Cr. Pl. (Ed. 1840) 47. Under the English form it is not necessary to describe the bank note, or bill of exchange, contained in the letter stolen. Id. 211. A bill of exchange, for the payment of ten pounds, is stated in the precedent, and no other description is given. The value of the article

inclosed need not be alleged in the indictment, or proved on the trial. This, however, is under the act of 7 Wm. IV. and 1 Vict. c. 36, § 40, which provides, "it shall not be necessary, in the indictment, to alledge, or to prove upon the trial, or otherwise, that the post letter bag, or any such post letter, or valuable security, was of any value."

It was held by the circuit court of Ohio (U. S. v. Nott [Case No. 15,900]) that some evidence of the value of the article inclosed in the letter must be given. That "it was clearly not necessary to prove the hand writing of the presidents and cashiers, whose signatures appear on the face of the notes, by one who has seen them write." But this was a case where the notes were described in the indictment; of course proof of them would be required. But from this, it by no means follows that it is necessary to set out the notes particularly in the indictment. The court, in the above case, further remarked, that a counterfeit note being of no value, or a note on a bank which never existed, or is wholly insolvent, would not constitute the offence under the statute. That the rights of the accused are in no sense abridged or jeoparded by a general description of the notes—"as bank notes, for the payment of money," as contained in the present indictment, strongly appears from the British precedent. For the principles of the common law are less departed from in that country, in the administration of justice; and, especially, of criminal justice, than in any other. And although the present form of an indictment like this has been framed under the sanction of an act of parliament, it is considered of no less weight of authority on that account. If the form of the indictment had been adopted by the rules or decisions of their courts, it would have been regarded as no slight evidence of the law. And the principle having received the sanction of the legislature, as well as of the courts, the authority is stronger. It is certainly stronger as regards the safety and propriety of the form. That the count does not state the value of the notes, or that they were of any value, was not objected in the agreement on the motion to quash, nor was it considered by the court. This is, perhaps, the strongest objection to the count. The notes are described, generally, as bank notes for the payment of money, but if, as suggested in the above case against Nott that the notes must be proved to be of some value, it is doubtful whether some value should not be averred. If the notes must be of some value, the notes of an insolvent bank, which are wholly worthless, are not within the statute. If this position be correct, the notes of insolvent banks form an exception, and the rule is, where an act prosecuted criminally may be within an exception, which makes it an innocent act, the defendant should be shown not to be within it. And if the notes in this case, being on

insolvent banks, could add nothing to the criminality of stealing the letter, it would seem that the indictment should show that they were not bank notes of this description, by an averment that they were of some value. But, as before remarked, at the trial, this point was not raised in the argument nor decided by the court.

As to the third objection that no crime is technically charged in this count, it is sufficient to say the count charges, in the very words of the statute, that the defendant did secrete and embezzle one letter, &c. The word embezzle is a significant word; it is used in the statute and means to steal by breach of trust, which is a most appropriate term, and more descriptive of the offence than any other.

It is objected, in the fourth place, that there is no averment that the act was done by the defendant, while acting as postmaster at Carrolton; and that if the act had been committed at any other place, he is not punishable under this count. There is no foundation for this exception. The count charges that the defendant did secrete and embezzle one letter containing divers bank notes for the payment of money; the said Charles Lancaster, being at the time of such secreting and embezzling as aforesaid, then and there employed in one of the departments of the postoffice establishment, to wit—a postmaster at Carrolton, &c.

In the fifth and last place it is objected that an acquittal or conviction on this count could not be pleaded in bar to a future indictment, for the same offence, more technically described. This objection cannot be sustained. The true test whether an acquittal could be pleaded is, whether the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first. Rex v. Clark, 1 Brod. & B. 473; Rex v. Sheen, 2 Car. & P. 634; Rex v. Emden, 9 East. 437. An acquittal upon an indictment for burglary and larceny, may be pleaded to an indictment for a larceny of the same goods; because on the former indictment the defendant might have been convicted of the larceny. 2 Hale, P. C. 245; Rex v. Vandercomb, 2 Leach, 716. Where the offence is alleged in the two indictments to have been committed at different times or places, they may be identified by a general averment, that they are one and the same offence. But if one of the indictments appear to be for the murder of a person unknown, or for the larceny of the goods of a person unknown; and the other for the murder of J. N., or for larceny of the goods of J. N., a plea may aver that the person so described as a person unknown, and J. N. are one and the same person and not different persons. And so in every other case, however different on the face of the two indictments the facts may be charged, yet, if they relate to the same offence, a formal acquittal or conviction may be plead-

ed. 2 Hawk. P. C. (6th Ed.) c. 35, § 3; Rex v. Wildey, 1 Maule & S. 183. On these principles there can be no doubt that an acquittal or conviction on this count, could be pleaded in bar to an indictment for the same offence.

The fourth count, to which objection is made, charges that the defendant, &c., "did then and there feloniously steal two bank notes for the payment of money, to wit—a bank note issued by the Bank of Louisville, in the state of Kentucky, for the payment of two dollars, and of the value of two dollars; and one other bank note issued by the Franklin Bank of Cincinnati, in the state of Ohio, for the payment of one dollar, and of the value of one dollar, out of a certain letter, which came to the possession of the said Charles Lancaster, at the time the said letter came to his possession, as aforesaid, and at the time of stealing of the said bank notes out of the said letter, as aforesaid, being then and there employed," &c. This charge is framed under the twenty-first section of the postoffice act above referred to, which provides, "if any person employed as aforesaid shall steal or take any of the same, that is, bank note or other article of value, named in the section, out of any letter, packet, bag, or mail of letters, that shall come to his or her possession, such person shall, on conviction," &c. The objections to this count are that the letter is not sufficiently described, and that it does not appear to have come into the possession of the defendant to be conveyed by post. It will be observed that this count does show that the letter came into the possession of the defendant as postmaster of Carrolton. It is not necessary that it should have come to his possession to be conveyed by post. The objection as to the statement of the letter is sufficiently answered in considering the same exception made to the second count.

An objection is made to the fifth count which, in no respect, varies from the fourth, except the defendant is charged in the fifth with having unlawfully taken two bank notes, &c. The words of the statute are, shall steal or take, &c. This count, it is insisted, charges no crime. It charges the taking to have been unlawful. Now the word unlawful is not in the statute, but the punishment provided can only have been intended by the statute where the taking was unlawful, that is, in violation of law. It could not mean a lawful taking. This offence, though one of high magnitude, is only a misdemeanor. It is not necessary to charge that there was a felonious taking. We think the count is sufficient.

The sixth and last count objected to, charges that the defendant did "steal out of a mail of letters," that then and there came to his possession, &c. This count, with the above exception, is the same as the preceding count. The words of the statute are, "any person employed as aforesaid, shall steal, or take, any of the same out of any

letter, packet, bag, or mail of letters, &c." This count charges the defendant with stealing out of a mail of letters, &c., one bank note, &c.; and we think it contains the requisite precision and certainty. Indeed the counts are all drawn with a commendable brevity and precision.

The motion to quash the indictment being overruled a jury was called and sworn. Mr. Brown, a traveling agent of the postoffice department, being sworn, stated that, being desirous of testing the honesty of the postmaster at Carrolton, repeated losses of letters containing money having occurred on that route, on the 25th May, 1840, a letter was written by the postmaster, at Pittsfield, signed D. A. Clarkson, and directed to James S. Bellsinger, at Carrolton, Greene county, Illinois, which on its back purported to be postmarked, at Salem, Iowa Territory. Seventy three dollars in bank notes—seventy of which were counterfeit—two dollars on the Bank of Louisville, Kentucky, and one dollar on the Franklin Bank of Cincinnati, both of which notes, he believes to have been genuine, were inclosed in the letter. It was accompanied by a postbill, with the postage marked seventy five cents—paid. The letter was put into the mail at Greggsville, and was received at the Carrolton office the 26th May. On the 28th May he went into the office, looked over the letters, and saw the above letter in the pigeon hole, under the letter B. The witness returned to Springfield where he resided, and in about eight or ten days, when Mr. Abell, postmaster at Chicago, then at Springfield. wrote to the postmaster at Carrolton, inquiring for the above letter, and requested him to forward it to Springfield if in his office. No answer was received nor was any letter forwarded as requested. The witness, in company with Mr. Abell, went to Carrolton; arrived there in the evening, and Mr. Abell, as he testified, called at the office for the above letter. He first inquired for a letter for himself; finding none, the postmaster answered the other inquiry by saying that there was no such letter in the office nor had there been in it any such. The postmaster then inquired whether he had not written to him from Springfield about the letter, and being answered in the affirmative, he observed that he intended to write him but neglected to do so.' The next morning Mr. Brown went into the office, and on looking over the account of mails received, he found that an entry had been scratched out made the 26th May, and another entry of mails received from Jacksonville, in the same place, written over it. This entry had been first made in a line below the entry which had been scratched out, and afterwards erased. On a close examination of the entry scratched out. Mr. Brown could perceive pretty distinctly the letters S—1 and m, and the letters I. T., from which it appeared, to him, the word Salem had been first inserted, and the letters I. T., designat-

ing Iowa Territory. On the account of mails received the postbill is copied, which states the place where the letter was mailed, the date, and the amount of postage paid or unpaid. In the above entry the date and the amount of the postage had, also, been scratched out, and other figures inserted. Mr. Brown thought he could perceive some parts of the figures, 75 not having been entirely scratched out or covered by the new entry. He says, since this time, the traces of the word Salem, and the others, have been eradicated by scratching. Mr. Brown inquired of the defendant who made the alteration, and he admitted that he had made it, but gave no satisfactory explanation respecting it. Mr. Brown then observed that if he had seen that entry before Lowndes was arrested, he should have had him examined. Mr. Chester, a witness, confirmed the statement of Mr. Brown as to the alteration of the entry or transcript of mails received. The letters I. T., and some of the letters in the word Salem, were perceivable when he first saw the entry. The entry was then different from what it now appears; the scratching out has been completed. He saw the lost letter in the office, but cannot, with certainty. state the last time he saw it there. Mr. Lowndes. a young man, who was an assistant in the office, states that the defendant took the letter, opened it, gave the witness thirty eight dollars of the money inclosed, and retained the balance himself. This was done on the afternoon of Sunday, succeeding the receipt of the letter.

In his defence, the defendant proved, by several witnesses, that he had maintained a good character in the county. That he had risen by his own merits, from a humble employment in life to be postmaster, and recorder of the county, having been elected to the latter office by the people, and that his character for honesty, before the present accusation, was as good as that of any other man. Mr. Carlin stated that he thinks the defendant was in the country, with his friends, on the Sunday on which Lowndes swore he took the letter. But the witness has no other ground for this impression, than that, during the day, he did not see the defendant in town. He did not see him leave the town or return to it, but, he thinks, as his residence is near the postoffice, he should have seen him sometime during the day had he not been absent. Mr. Terry stated that Lowndes, when about being arrested, on the charge of the defendant, for taking this letter, wanted him to swear that he loaned Lowndes twenty dollars, which had been seen in his possession, and how he obtained it he could not prove. Mr. Avery saw Lowndes' pocket book which contained ninety eight dollars. Among these was a twenty dollar note on the Valley Bank of Virginia, and a one dollar note on a bank in Cincinnati. Notes of these descriptions, the former being a counterfeit, were inclosed in the stolen let-

ter. Mr. Adams heard Lowndes say that if they made him tell how he came by his money, he would make Lancaster, the defendant, tell how he came by his. Mr. Bowyer stated that he was in the office when a man (Mr. Abell) inquired for the letter to Bellsinger, when the defendant asked Lowndes whether there had been such a letter in the office, and that Lowndes replied there had been such a letter, but he had given it to Bellsinger. There was other evidence of the statements of Lowndes with a view to discredit him.

THE COURT, in their charge to the jury, adverted to the prominent points in the evidence, and, particularly, to those facts about which there seemed to be no controversy. These were that the letter charged to have been stolen was in the postoffice at Carrolton, the denial of the defendant that such a letter had been in the office, and the alteration of the record of mails received, which he admitted had been done by him; and, also, the traces of the original entry, that had been scratched out. as sworn to by Mr. Brown and Mr. Chester. That to these facts the defendant had only offered his former good character, and that the letter might have been taken by his assistant, Lowndes. That the statements of Lowndes, under the circumstances, should be received with great caution, and, where uncorroborated, should have little weight. The law made him a competent witness, though by his own statement he was an accomplice. If the jury believed his statement, there could be no doubt of the defendant's guilt. But it was for them to weigh the testimony and give credit only where it was due. That they might consider the case independently of the statements of this witness, and then, in connection with his evidence, if they entertained reasonable doubts of the defendant's guilt, it must lead to his acquittal. But if, on the other hand, these doubts do not exist they were bound to convict. That they had a right to find the defendant guilty or not guilty of any one or more counts in the indictment. And upon the whole, that looking into the evidence with great care, and under a due sense of the high importance of the case, they would return such a verdict as the law and evidence required.

The jury returned a verdict of guilty against the defendant on three counts in the indictment, which charged the defendant with secreting and embezzling the letter.

A motion was made for a new trial on grounds assigned, which, after due consideration by the court, was overruled. In giving their opinion, on this motion, THE COURT said the evidence on which the jury had rendered their verdict was entirely satisfactory. That, independently of the testimony of Lowndes, the evidence proved the guilt of the defendant, in their opinion, beyond all reasonable doubt.

At a subsequent day of the term THE COURT sentenced the defendant to ten years confinement in the penitentiary.