## UNITED STATES *v.* FULLER.

### (*Supreme Court of New Mexico.* January, 1889.)

1. POST-OFFICE—EMBEZZLEMENT FROM THE MAILS—INDICTMENT.

Rev. St. U. S. § 5467, prescribes the punishment for any one who embezzles any package intended to be conveyed by mail, and which contains certain enumerated articles, or "any other article of value." *Held,* that an indictment under this statute which charged the embezzlement of a package containing "eight hundred dollars" was sufficient, without setting out the kind of dollars, or that such dollars possessed value.[1]

2. SAME—EMBEZZLING REGISTERED PACKAGE.

The said section provides that "any person employed in any department of the postal service, who shall secrete, embezzle, or destroy any letter, packet, bag, or mail of letters intrusted to him, or which shall come into his possession, and which was intended to be conveyed by mail; * * * any such person who shall steal or take any of the things aforesaid out of any letter, packet, bag, or mail of letters which shall have come into his possession, either in the regular course of his official duties, or in any other manner whatever, and provided the same shall not have been delivered to the party to whom it is directed, shall be punishable," etc. *Held,* that an indictment against a postmaster for embezzling a registered package was sufficient without negativing the proviso.

3. SAME—EVIDENCE—VARIANCE.

In a prosecution for the embezzlement of a registered package, where there is proof that such a package was actually put in the mail, and afterwards taken by the accused, a variance as to the name of the sender, or of the person to whom the package was directed, is immaterial.

4. SAME—SUFFICIENCY.

In a prosecution for the embezzlement of a registered package, it sufficiently appears that the accused was in the employ of the post-office department where it is shown that demand was made upon him as postmaster for the registered package, both by the sender and the post-office inspectors; that he gave a receipt for the package to a postal official; that he claimed to have forwarded the package to another postal official; and that his resignation as postmaster was demanded.

5. WITNESS—IMPEACHMENT—BY WRITTEN TESTIMONY.

In order to impeach witnesses by the introduction of their written testimony given at a former trial, a foundation must first be laid by showing them such written testimony, or reading it to them at the time of their interrogation.[2]

Appeal from Third judicial district; HENDERSON, Judge.
*Mr. Young,* for appellant.    *Thomas Smith,* for appellee.

BRINKER, J. The defendant was charged in the court below with embezzlement. The indictment was based upon section 5467, Rev. St. U. S., and contained six counts. The first three charged him with embezzling a packet from the mails, and the last three charged him with stealing the contents of such packet.

The essential part of the first count is in these words: "The grand jurors," etc., "do present that June L. Fuller, late," etc., "on the 9th day of October, 1884, at," etc., "was a person employed in one of the departments of the post-office establishment of the said United States, to-wit, a postmaster at Hillsboro, in the district aforesaid; and that on the 9th day of October, 1884, in the post-office at Hillsboro aforesaid, a certain registered packet, then lately before sent by one M. W. Flourney, of Albuquerque, N. M., and intended to

---

[1] An information for robbery which describes the property taken as "twenty-five dollars in money," without any allegation of its value, or any excuse for want of greater particularity, is fatally defective. State v. Segermond, (Kan.) 19 Pac. Rep. 370. So is an indictment for larceny describing the property as "two ten-dollar bills of United States currency." State v. Oakley, (Ark.) 10 S. W. Rep. 17. An indictment which charges the taking of a certain sum, "lawful money of the United States," is not defective because not alleging that such money was personal property. People v. Riley, (Cal.) 16 Pac. Rep. 544.

[2] Evidence as to what a witness testified on a former trial is not admissible to impeach him until he has been particularly inquired of as to such statements. State v. Parker, (Mo.) 9 S. W. Rep. 728. See, also, Kennedy v. State, (Ala.) 5 South. Rep. 300, and note.

be conveyed by post to one V. Wallace, at Kingston, N. M., and which said registered packet contained the sum of eight hundred dollars, and came into the possession of him, the said June L. Fuller, so then and there being employed as a postmaster at Hillsboro, in the district aforesaid, and the said packet then and there containing the sum of eight hundred dollars, having so as aforesaid come into the possession of him, the said June L. Fuller, he, the said June L. Fuller, did then and there, with force and arms, on the 9th day of October, 1884, in the district aforesaid, feloniously secrete the packet so then and there containing the said sum of eight hundred dollars, contrary," etc.

There was a motion to quash the indictment filed, assigning various reasons therefor; the principal one being that the indictment did not charge any offense against the laws of the United States. This motion was overruled, and the defendant excepted. A trial was had, and the defendant convicted. Afterwards motions for a new trial and in arrest of judgment were filed and denied, and the cause brought here upon appeal. To reverse the judgment the defendant insists that the court erred in denying his motion to quash the indictment, and in denying his motions for a new trial and in arrest of judgment, and for refusing to allow certain testimony offered by him to go to the jury. These will be considered in their order.

The statute upon which this indictment is framed is in these words: "Any person employed in any department of the postal service who shall secrete, embezzle, or . destroy any letter, packet, bag, or mail of letters intrusted to him, or which shall come into his possession, and which was intended to be conveyed by mail, or carried or delivered by any mail-carrier, mail messenger, route agent, letter-carrier, or other person employed in any department of the postal service, or forwarded through or delivered from any post-office or branch post-office established by authority of the postmaster general, and which shall contain any note, bond, draft, check, warrant, revenue stamp, postage-stamp, stamped envelope, postal-card, money order, certificate of stock, or other pecuniary obligation or security of the government, or of any officer or fiscal agent thereof, of any description whatever; any bank note, bank post-bill, bill of exchange, or note of assignment of stock in the funds; any letter of attorney for receiving annuities or dividends, selling stock in the funds, or collecting the interest thereof; any letter of credit, note, bond, warrant, draft, bill, promissory note, covenant, contract, or agreement whatsoever, for or relating to the payment of money, or the delivery of any article of value, or the performance of any act, matter, or thing; any receipt, release, acquittance, or discharge of or from any debt, covenant, or demand, or any part thereof; any copy of the record of any judgment or decree in any court of law or chancery, or any execution which may have issued thereon; any copy of any other record, or any other article of value, or writing representing the same,—any such person who shall steal or take any of the things aforesaid out of any letter, packet, bag, or mail of letters, which shall have come into his possession, either in the regular course of his official duties, or in any other manner whatever, and provided the same shall not have been delivered to the party to whom it is directed, shall be punishable by imprisonment at hard labor for not less than one year, nor more than five years."

There was no evidence offered under the fourth, fifth, and sixth counts of the indictment, which charged the defendant with the larceny of the contents of the packet, and they need not be further noticed. The second and third counts were substantially the first set out above. This statute does not make it an offense to secrete or embezzle from the mails a packet simply, but a packet containing one or more of the things enumerated, or some other article of value. There is no pretense that any of the articles specifically mentioned were contained in the packet, but that it did contain some other articles of value, viz., $800. Defendant contends that this is not a sufficient de-

scription of such articles, but that the indictment should have set out the kind of dollars, whether coin or currency, and whether they were of the coinage or issue of the United States or some other country, and their value. The statutes of the United States make the dollar the unit of value. Sections 3511, 3585, Rev. St., and 20 St. at Large, 25. These statutes are public acts. The rule is elementary that the court will take judicial notice of all public statutes, and that it is not necessary to plead or to prove them. 2 Phil. Ev. 106; Peake, Ev. 30; 1 Bl. Comm. 85.

Now, if the dollar is the legal unit of value, then the indictment alleged that the packet contained 800 units of value. These units are called in the statute "dollars," and are so designated in the indictment. It is immaterial what the extent or amount of the value is. If the packet contained an article of any value, however small, it is sufficient. The law says the dollar is the basis upon which all values are to be computed. The indictment charges that the packet contained $800; that is, 800 measures of value. But it is said that the pleader should have alleged that these dollars possessed value; that he should have put it in the ordinary form laid down in the books,—thus: "Eight hundred dollars, of the value of eight hundred dollars;" or, "Lawful money of the United States, to-wit, eight hundred dollars, of the value of eight hundred dollars." If the packet had contained any other article to which the law fixes no certain value, then this would undoubtedly be true; for instance, a piece of jewelry. The law places no value on such an article. Its value, if any, is regulated entirely by the usage of trade, and the law of supply and demand, and such value should be laid in the indictment, in the current money of the country, made by law the standard or unit of value. To charge the $800 would add no force or weight to the indictment. It would not make the .charge stronger, nor would it give the defendant any more information of the nature and cause of the accusation against him than is contained in this indictment. This view finds support by analogy in the principle laid down in the following cases: *Mathews* v. *Rucker*, 41 Tex. 636; *Short* v. *Abernathy*, 42 Tex. 94; *Thorington* v. *Smith*, 8 Wall. 1; *Stoughton* v. *Hill*, 3 Woods 404; *Confederate Note Case*, 19 Wall. 548; 5 Amer. & Eng. Cy. Law, 854; *U. S.* v. *Lancaster*, 2 McLean, 431.

As a further objection to the indictment, defendant relies upon its failure to negative this clause of the section of the statute· "And provided the same shall not have been delivered to the party to whom it is directed." In *U. S.* v. *Cook*, 17 Wall. 168, the court says: "Where a statute defining an offense contains an exception in the enacting clause of the statute which is so incorporated with the language defining the offense that the ingredients of the offense cannot be accurately and clearly described if the exception is omitted, the rules of good pleading require that an indictment found upon the statute must allege enough to show that the accused is not within the exception; but, if the language of the section defining the offense is so entirely separable from the exception that the ingredients constituting the offense may be accurately and clearly defined without any reference to the exception, the pleader may safely omit any such reference, as the matter contained in the exception is matter of defense, and must be shown by the accused." If the exception is in another clause of the section separate from the clause defining the offense, it need not be noticed. 1 Bish. Crim. Proc. § 632 *et seq.* The statute creates two offenses. *U. S.* v. *Pelletreau*, 14 Blatchf. 127. The portion of the statute creating the second offense falls between that portion creating the offense here charged and the proviso. In defining the ingredients of the first offense, the proviso may be ignored, and still a complete crime will be charged. The ingredients of this offense are that the accused must be employed in the service of the post-office department. The packet must have been put in the mails for transmission, or must have been delivered to the defendant for that purpose. It must contain one of the articles enumerated or some other arti-

cle of value, and have been secreted or embezzled by him. This makes the offense complete, and an indictment charging these things accurately and clearly describes all of the ingredients of the offense, without negativing the exceptions or proviso. If the packet had been taken out of the mail, and delivered to some one, not an employe of the department, other than the person to whom it was directed, for the purpose of delivery to such person, and should then be secreted by him, I apprehend no offense would be committed under the first part of the section, although it had not been delivered to the person to whom it was directed, because the person secreting, etc., would not sustain the relation of employe to the post-office department. But if it had been thus taken out of the mails by an employe of the department, and its contents stolen, then, in order to constitute an offense under the latter part of the section, such stealing must have been done before delivery to the person to whom the packet was directed. In such case the exception should be negatived; for, if the larceny was committed after the delivery of the package to the person to whom it was directed, no offense would be committed under the federal statute, but it would fall under the territorial statute, as in ordinary cases of larceny. So, in order to make the offense larceny under this statute, the taking the contents of the packet must have been done before the government had fully completed the duty it had undertaken, by delivering the packet to the person to whom it was directed. It is clear from this that a complete offense in all its particulars under the first clause can be set out in the indictment, without reference, in any manner, to the exception or proviso.

The next point made by the defendant is that there was a variance between the allegation in the indictment and the proof, as to the description of the packet charged to have been embezzled. The portion of the indictment on this point is: "A certain registered packet then lately before sent by one M. W. Flourney of Albuquerque, N. M., and intended to be conveyed by post to one V. Wallace, at Kingston, N. M." The evidence was substantially that M. W. Flourney, as teller of the Central Bank of Albuquerque, put $800 in an envelope, and addressed it to Vincent Wallace, cashier of a bank at Kingston. Mr. Flourney is positive as to this. He states in one place that he sent this packet, but in another that he does not remember whether he put it in the post-office or not, but the tenor of his testimony is that he did. He says that whatever he did was done as the representative of the Central Bank. The books of the post-office show that the packet was sent by the Central Bank to Vincent Wallace, but there is nothing to show, beyond the testimony of Mr. Flourney, who actually carried the packet to the post-office and delivered it to the person then in charge. It is unnecessary to say that the bank could only have delivered it there by the hand of some agent. While the testimony is meager, there is enough to justify the jury in finding that Mr. Flourney posted the packet.

There appears to be no force in the objection that there was a variance between the allegation and proof upon this point. There was no attempt made to describe the packet in the indictment, but simply the statement of the attendant facts, as inducement to the material fact, that the letter was in the mail. Who put it there, or to whom it was addressed, were otherwise immaterial. The material facts in this case are that a letter or packet, with certain contents, was in the mail, and afterwards abstracted and embezzled by defendant. The cases cited by defendant from the McLean Reports tend rather to support than to overthrow this position.

In *U. S.* v. *Keen,* 1 McLean, 429, the second and fourth counts of the indictment charged the defendant with stealing a letter containing a draft, and described the draft particularly as having been drawn by "Joseph Johnson," and to support this a draft signed by "Jos. Johnson" was offered in evidence. The court with great hesitation held the draft inadmissible under those counts, upon the ground that, since the prosecutor had undertaken to particu-

larly describe the draft in the indictment, the proof should conform to the al-
legation. In the third and fifth counts the allegation was, "a draft on the
Bank of the United States," and the court held it admissible under those
counts. The implication is strong from the reasoning in this case that if the
name of the sender had been used as a statement of the fact merely, and not
as descriptive of the draft, the variance would have been immaterial. The
court quotes with approval from the case of *King* v. *Ellins*, Russ & R. 188,
the following: "Where the letter embezzled was described as containing sev-
eral notes, it was held sufficient to prove that it contained any one of them;
the allegation not being descriptive of the letter but of the offense."

In the case of *U. S.* v. *Lancaster*, 2 McLean, 431, a conviction was sus-
tained upon an indictment which charged the defendant with embezzling a
letter from the mails containing divers bank notes, without any allegation as
to who sent the letter, or to whom it was directed. This supports the position
we have taken, that those allegations are mere statements of collateral or at-
tendant facts, and not descriptive averments, and therefore immaterial. If
it be shown that a letter or packet was actually put in the mail, and the same
letter or packet afterwards secreted or embezzled by the accused, a variance
in the name of the sender or the person to whom it was to be delivered would
be immaterial.

The case of *U. S.* v. *Brown*, 3 McLean, 233, decides that where unneces-
sary matter of description is stated in the indictment such matter must be
proved as laid.

During the trial defendant's counsel interrogated certain witnesses for
the government as to their testimony upon a former trial of the cause, for the
purpose of impeaching them by showing that they had made statements in
contradiction of their testimony given upon the trial then in progress. Some
of the witnesses denied having made such statements; others stated that they
did not remember what they had said on the former trial. The defendant
afterwards offered to prove what those witnesses had testified to on the former
trial, upon the points embraced in the questions propounded to them, by read-
ing to the jury the record of the testimony given by these witnesses on such
trial. To this offer the government objected, upon the ground that the foun-
dation for the admission of such testimony had not been properly laid. The
court sustained the objection, and the defendant excepted. There was no er-
ror in this ruling. The offer of the defendant shows that the testimony given
by these witnesses on the former trial was in writing, and in such case the
foundation for its introduction as impeaching testimony could only be laid by
either showing the written testimony to the witness, or reading it to him at
the time he was interrogated. Section 2084, Comp. Laws 1884, is conclusive
on this point.

The next exception is that there was no evidence to show that at the time
of the alleged embezzlement the defendant was employed in the post-office de-
partment. This position is not sustained by the record. Vincent Wallace
testified that, upon the failure of the packet to reach him at Kingston within
a reasonable time, he went to Hillsboro, and called upon defendant as post-
master, and inquired for the packet; that defendant first looked through his
papers for a receipt for the packet from the postmaster at Kingston, and failed
to find one: he showed Wallace his books, in which he had entered the fact
of its having been forwarded to Kingston; that he also searched through the
post-office for the packet, but failed to find it. The post-office inspectors tes-
tified that they received a letter from the defendant informing them of the
loss of the packet; that they went to see defendant, and demanded that he
should deliver the packet, or the money which it had contained, to them.
This the defendant corroborates in his testimony, and it is also sustained by
the testimony of defendant's father. L. W. Lenoir, postmaster at Lake Val-
ley, testified that the packet in question passed through his hands as such

postmaster, and was by him forwarded to Hillsboro, and that the defendant sent him a receipt for it. The defendant testified that the post-office inspector demanded his resignation as postmaster. There was an abundance of evidence of like import. But stronger than all this was the indorsement made by the defendant, and signed by him as postmaster at Hillsboro, upon a tracer or letter sent out in search of the missing packet, that the packet had been received at his office, and forwarded through the mail to the postmaster at Kingston, and that he had never received a receipt from such postmaster for it. Upon this testimony the jury could do nothing less than find that the defendant was employed in the post-office department.

Finding no error in the record, the judgment is affirmed.

LONG, C. J., and REEVES, J., concur.