# CASES DETERMINED

IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

AT FEBRUARY TERM, 1853.

---

### THE STATE v. STIMSON.

1. Under the first section of the act to punish frauds upon the incorporated banks of this state (*Rev. Stat.* 125), it is an indictable offence for the cashier of an incorporated bank of this state to convert to his own use bank notes, the property of the said corporation, with intent wrongfully to make use of the same, and it is not necessary to allege that such notes were intrusted to him as cashier.

2. It is not necessary, in an indictment for such offence, to charge either that the cashier *embezzled* the notes, or that he took them with *intent to defraud the corporation.*

3. It is not sufficient to describe such offence in the words of the statute.

4. It is not sufficient to charge the defendant with converting to his own use $19,000 of money and $19,000 of bank bills, with intent, &c.

5. There should be some description, either of the number or denomination of the coins and of the notes, and, also, an averment of the value of the notes.

6. It is not necessary to aver the value of coins of the government; they have a value established by law, of which courts will take notice.

7. Embezzling or converting promissory notes, or other commercial paper, is not an offence within the meaning of the said act.

8. The embezzlement or conversion must either be of coin, or of bank bills or bank notes, to come within the operation of the statute.

The argument and decision in this matter was upon demurrers to three distinct indictments, which had been found against Stimson, the plaintiff in *certiorari*, in the Passaic Oyer and Terminer, and which had been removed into this court by *certiorari*.

The first indictment was in the words following:

Passaic Oyer and Terminer and General Gaol Delivery, January term, A. D. 1852, Passaic county, to wit:—The jurors of the state of New Jersey for the body of the county of Passaic, upon their oath present, that before and at the time of the commission of the misdemeanor first herein after charged, at Paterson, in the county of Passaic, and state of New Jersey, ‧ there was an incorporated bank, using the name and style of "the President, Directors, and Company of the Peoples Bank at Paterson," and incorporated by and organized and existing under and by virtue of certain acts of the legislature of the said state, that is to say, an act entitled, "An act to establish the Peoples Bank of Paterson, passed on the eleventh day of December, A. D. eighteen hundred and twenty-four," and a supplement thereto entitled, "A supplement to the act entitled, an act to establish the Peoples Bank at Paterson, passed the eleventh day of December, A. D. eighteen hundred and twenty-four," which supplement was passed on the third day of March, A. D. eighteen hundred and thirty-five; and an act entitled, "An act to extend the charter of the Peoples Bank of Paterson," passed on the second day of March, A. D. eighteen hundred and forty-one; and that at the time of the commission of the misdemeanor first herein after charged, Henry C. Stimson, late of the city of Paterson, in the county of Passaic aforesaid, was the cashier of the said incorporated bank; and that the said Henry C. Stimson, on the thirteenth day of December, A. D. eighteen hundred and fifty, with force and arms, at the township of Paterson, in the county of Passaic aforesaid, and within the jurisdiction of this court, unlawfully did convert to his own use nineteen thousand dollars of money and nineteen thousand dollars of bank notes of the said incorporated bank, the property of the said bank, with intent unlawfully to make use of the same; he, the said Henry

C. Stimson, at the time he so converted the same to his own use, then being cashier of the aforesaid incorporated bank, as aforesaid, contrary to the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same.

And the jurors aforesaid, upon their oath aforesaid, do further present, that before and at the time of the commission of the misdemeanor herein after charged at Paterson, in the county of Passaic, and state of New Jersey, there was an incorporated bank using the name and style of the President, Directors, and Company of the Peoples Bank at Paterson, and incorporated by and organized and existing under and by virtue of certain acts of the legislature of the state of New Jersey aforesaid; and that, at the time of the commission of the misdemeanor herein after charged, Henry C. Stimson, late of the city of Paterson, in the county of Passaic aforesaid, was the cashier of the said incorporated bank; and that the said Henry C. Stimson, on the fifteenth day of July, in the year of our Lord one thousand eight hundred and fifty one, with force and arms, at the city of Paterson aforesaid, in the county of Passaic aforesaid, and within the jurisdiction of this court, unlawfully did convert to his own use thirty-seven thousand five hundred dollars and thirty-seven thousand five hundred dollars of the bank notes of the said incorporated bank, the property of the said bank, with intent wrongfully to make use of the same, he, the said Henry, &c. (Same as first count to end.)

Second indictment has two counts:

*1st count* charges, that on 15th February, 1851, he did convert, &c., $14,244 of *the moneys* of the said bank, and $14,244 *of the bank bills* of the said bank, &c., the said bank bills being of the value of $14,244.

*2d count* charges, that on 26th March, 1851, he did convert, &c., $14,564 *of moneys,* &c., and $14,564 " *of bank bills* of the said bank, the said bills being of the value of $14,564," &c.

Third indictment:

*1st count* charges, that on 28th August, 1851, he " did convert to his own use a certain promissory note, bearing date the fifteenth day of August, in the year last aforesaid, made by

certain persons using the name and style of Davis, Evans and Dodge, payable in four months after the date thereof, for the sum of one thousand dollars, and on which one thousand dollars was then and there owing, which promissory note was then and there the property of the aforesaid incorporated bank, and was of the value of one thousand dollars, with the intent," &c.

*2d count* charges, that, on 11th September, 1851, he "did convert, &c., $7000 *of moneys* the property of the said bank, and *bank notes* of the said bank amounting to the sum of $7000, the property of the said bank, with intent," &c.

To each of these indictments, and to each count in them, demurrers were filed, and special causes were assigned, as 'follows:

*1st.* To the first indictment, because it does not appear, by the said first count, on what certain day, year, and place, and of what certain money and bank notes, the said offence in the said first count, by the said Henry supposed to be done, was committed, as by the law of the land ought to be made; and because no offence indictable by the law of the land is therein charged or described against him, the said Henry, and because the said first count is in other respects vague, uncertain, and insufficient; wherefore, for the insufficiency of the said first count, the said Henry prays judgment, and that he, by the court here, may be discharged of and from the premises in that count contained, &c.

To the second count, same as above.

To the second indictment, same as above in all things, except in these demurrers is inserted "bank bills," instead of "bank notes," so as to correspond with indictment.

To the third indictment, same as above, except in this demurrer to first count is inserted "promissory note," instead of "money and bank notes;" and in the demurrer to second count the causes are same as in first above case.

𝓘 Indictment:

1st count charges, that the defendant, on the 13th December, 1850, being cashier of the Peoples Bank at Paterson, converted to his own use $19,000 of money and $19,000 of bank

notes of the said incorporated company, the property of the said bank, with intent wrongfully to make use of the same.

2d count charges a similar conversion of $37,500 on the 15th July, 1851.

II Indictment:

1st count charges a similar conversion of $14,244 (using the term "bank bills," instead of "bank notes,") on the 15th February, 1851.

2d count charges a similar conversion of $14,564, on the 26th March, 1851.

III Indictment:

1st count charges a similar conversion of a certain promissory note, given by Davis, Evans & Dodge, dated ——, and for the amount of $1000, the property of the bank, &c.

2d count charges a similar conversion of $7000 of money and $7000 of bank notes of the said incorporated company, the property of the said bank.

Defendant's points, by *J. P. Bradley*.

I. In criminal cases no aid can be derived from the statute of *Amendments and Jeofails*. *Rev. Stat.* 991, § 19.

So that formal defects, as well as defects of substance, are available on demurrer, whether specially pointed out or not.

II. No *intendment* can be employed to help out an indictment. Every thing necessary to make out the offence charged must be fully and specifically averred. 2 *Hawk. P. C.*, c. 25, § 60.

III. The indictments in this case are defective, *in point of form*, in the following particulars:

1. In the specification of time, no year is alleged. The abbreviation "*A. D.*" is used. Such abbreviations are not sufficient in an indictment or any other pleading. *Rev. Stat.* 991, § 17; 1 *Chit. Crim. Law* 217, 176.

2. No *venue* is laid for several material facts, as—(*a*) the fact that defendant was cashier at the time of the offence; (*b*) the fact that he was cashier when he converted to his use.

3. A wrong *venue* is laid in the first two indictments for the commission of the offence charged, *viz: "at the township*

of *Paterson.*" There was no such township when the indict-
ments were found. *Charter of the city of Paterson, Statute
Laws of* 1851, 444.

4. *The articles alleged to have been converted are not spe-
cified with sufficient certainty.* The only description (except
in the first count of the 3d indictment) is as follows: "$19,000
*of money and* $19,000 *of bank notes*" of the said incorporated
company.

5. This description is defective, both as to the *money* and as
to the *bank notes.* 1 *Chit. Crim. Law* 235–6; 3 *Ib.* 947;
*Rex* v. *Johnson,* 3 *Maule & Sel.* 539. (This case shows the
utmost verge to which the courts have gone in dispensing with
certainty.) *Rex* v. *Furneaux, Russ. & Ry.* 335; *Rex* v. *Frye,
Ib.* 482; *Rex* v. *Tyer, Ib.* 404.

The British parliament passed an act (7 and 8 Geo. IV., c.
29, § 48,) for the purpose of allowing a more general mode of
statement in cases of embezzlement. *Archb. Crim. Pl. and
Ev.* 383; *Act Do. Appx.* 48.

Before the passage of that act it was necessary to set forth
specifically some one or more articles. *Archb. Cr. Pl. and Ev.*
263 (*ed.* 1840); 5 *C. &. P.* 300, under this act.

[N. B. The precedents referred to by Mr. Barkalow, in 3
*Chit. Crim. Law* 962, are taken from or founded on the pre-
cedent in *Russ. & Ry.* 62, which is expressly referred to by
Chitty for his authority. But this precedent was overruled in
the subsequent cases in *Russ. & Ry.,* to which reference has
been made.]

The legislature of Massachusetts also passed an act, in 1834,
to authorize generality in the statement of the offence. *Whart.
Amer. Crim. Law* 423.

All which goes to show what the common law rule, *as to
certainty,* and as applied to the statutory offence of embezzle-
ment, was, and yet is.

The state, under these indictments, would at the trial have
a wide and indefinite range, and would not be confined to
what the grand jury had specifically in view. We say they
ought to have designated with such certainty that we could
prepare our defence. As it is, we may be prepared for one

case which we suppose to have been indicated, and at the trial we may be surprised by an entirely different case.

IV. The indictments are defective in point of substance.

1. *It does not appear by the indictments that the bank was defrauded, or that there was any intent to defraud it.*

We contend that this *must* appear, either from the character of the acts charged or by direct averment. The *title* of the act under which the indictments are found is thus: "An act to punish *frauds committed on the incorporated banks of this state,*" &c.

The whole scope and evident intent of the act indicate the same thing. It is not for defrauding other persons or injuring other persons, but for *defrauding and injuring* the bank, of which the accused is an officer, that so severe a punishment is provided.

Now the indictments charge that the defendant, being cashier, converted to his own use $19,000 of money and $19,000 of bank notes of the said incorporated company, the property of the bank, with intent wrongfully to make use of the same.

The bank notes are alleged to have been the notes of the Paterson Bank itself. These notes were valueless (except as so much printed paper) when not in circulation. It does not appear, by the indictment, that the defendant put them into circulation. It therefore does not appear that the bank was injured or defrauded one dollar. The act of the legislature is certainly not directed against the conversion of bank notes that have been redeemed, and that have no value as money; but only against a conversion or embezzlement of the "funds," the "moneys" of the bank, that which has value as "money," otherwise a clerk or officer could be convicted of a "high misdemeanor" for kindling his fire with old bank notes that have been long ago redeemed and laid aside.

Therefore, as the bank notes alleged to have been converted were the notes of the bank itself, such a conversion of them should have been shown (*viz.* by putting them into circulation) as would have a tendency to defraud the bank. As nothing of this kind is shown, except by intendment, nay, as it

is not shown even by intendment, the indictments are fatally defective.

The mention of "moneys" in the same count in every case cannot save the indictments. If the count is bad in part, it is bad in whole. I can find no such authority to the contrary, as mentioned by Mr. Barkalow. The authority to which he referred, I think, must have been this, that only part of what is charged need be proved. But then all the charges made must be legal. It is not like the case of a general verdict of guilty on several counts, some of which are good and some bad. Here each count is bad. What judgment can this court render, so as to direct the court of trial to receive evidence under part of a count and not under the whole of it?

These remarks, of course, do not apply to the first count of the third indictment; that count is erroneous on other grounds.

2. It does not appear by the indictments that the acts charged were committed by the defendant in his official capacity as cashier; in other words, it does not appear that he obtained the funds converted, or that he had possession of them as cashier.

We contend that this is necessary to constitute the offence which the legislature had in view.

The criminality of the offence of embezzlement by cashiers and other bank officers resides materially in the great trust and confidence reposed in them as officers of the bank. It was, undoubtedly, this sort of criminality which the legislature intended to punish, and it exists only in cases where the funds embezzled or converted came into the hands or possession of the accused in his official capacity. Hence, we say, it must be alleged that he had them, or came by them as cashier.

The words of the act are "purloin, embezzle, or convert to his own use;" and although they are connected together disjunctively, so as to make, by a strict reading, "purloining," "embezzling," and "conversion" distinct offences, yet they are rather to be viewed as variations of phraseology used by the legislature to describe and point out substantially one and the same offence. Persons holding a fiduciary capacity, like bank officers, and embezzling or converting to their own use

State v. Stimson.

moneys intrusted to them in that capacity, could not be convicted of larceny at common law. It amounted only to a breach of trust. This is the offence which the legislature intended to reach; this the mischief which the law was intended to remedy.

Now, to constitute this offence, it is not only necessary that the offender should hold the confidential relation of an officer of the bank, but that he should take advantage of his position, as such officer, to perpetrate the offence; that is, it must be shown that he had or obtained possession of the moneys as cashier or other officer of the bank.

It will not do to follow the dry letter of the act, the scope and spirit of it must be regarded in framing an indictment upon it.

What is the object of the act? Is it not plainly this, to punish bank officers who take advantage of the trust which the stockholders and the public are obliged to repose in them?

To make them liable to this punishment, therefore, must it not be shown that they had or obtained the missing funds in consequence or by virtue of their office; or, at least, that they knew them to be the funds of the bank, and that, having such possession or knowledge, they converted them to their own use?

This has always been my reading and understanding of the statute. It seems to me to be as much involved in it as though it had been expressly stated. Suppose that one of the directors of the bank should receive, in trust for a special purpose or a deposit, a sum of money from a third person, who had purloined it from the bank without the knowledge of such director, would that director be criminally liable under this act if he should use such money for his own purposes? Certainly not. And yet it would be the money of the bank, and he would convert it to his own use, with intent wrongfully to make use of the same; and an indictment drawn precisely as these indictments are would be true.

This illustration shows most conclusively that if these indictments are good, an innocent man might be convicted under them.

The grand fault lies here.   The indictments fail to show that the cashier had or obtained. the moneys as cashier, or that he knew them to be the moneys of the bank, or that he converted them with intent to defraud the bank.   We insist that at least one of these allegations, if not more, should have been contained in the indictments.

3. The first count of the third indictment, besides that it is open to the last objection equally with the others, is fatally erroneous in another particular.   It charges a wrongful conversion of a certain promissory note.

Now the act does not speak of promissory notes, nor is a promissory note within its purview.   The language of the act is, "convert to his own use any money, bank bill, or note." This language clearly refers to no other notes than bank notes.

The 45th section of the crimes act, *Rev. Stat.* 269, has the same expression, and goes on to enumerate bills of exchange, orders, promissory notes, &c., as distinct species of securities. This appears to be so plain a matter, that it is hardly worth while to spend words about it.

[The prosecutor admitted that it had not occurred to him, and intimated, as I understood him, that this count was not, in his opinion, tenable.]

*D. Barkalow*, for the state.

I. As to the allegation of time and place, it is designated with sufficient certainty ; the letters A. D. have a known English signification, and are well understood by every one.

II. As to the alleged defect in the description of the subject matter of the offence.   The offence is laid in the words of the statute by which it is created, and it is a settled rule that such description is sufficient.   All that is required in an indictment is a certainty to a common intent.   *Arch. Cr. Pl. & Ev.* 40, 41, and 43.

These. indictments, in this particular, are according to the established and approved forms of English indictments under their embezzlement acts.   *Arch. Cr. Pl. & Ev.* 238 and 239, and forms there given ; 3 *Chit. Cr. Law* 962 and 982 ; 3 *Chit. Cr. Law* 1020.

It is sufficient in such indictments if they have all the certainty the subject matter is capable of. *Arch. Cr. Pl. & Ev.* 42, 45.

In *Commonwealth* v. *Richards*, 6 *Mass.* 337, it was held, on an indictment for larceny, that " a bank note at the value of ten dollars of the goods and chattels of N. B." was a sufficient description in a statutory offence.

III. To the objection, that no offence is charged, because it is not alleged to be " with intent to defraud the corporation," that is not required by the statute to constitute the offence. The statute is in the alternative; it is with intent *to defraud said corporation*, or *wrongfully to make use of the same.* Nor is it necessary that it should be alleged in terms that they were *embezzled.* The statute here again makes use of the alternative, if he shall *embezzle* or *convert to his own use*, &c. The act and intent are both stated in the alternative, and either act coupled with either intent is sufficient to constitute the offence.

*Zabriskie,* in reply.

These indictments are under the first section of the act of April 15, 1846, *R. S.* 125, which enacts, " if any cashier of any incorporated bank of this state shall purloin, embezzle, or convert to his own use, any money, bank bill, or note, the property of said corporation, with intent to defraud said corporation, or wrongfully to make use of the same, he shall be guilty of a high misdemeanor."

1. The first objection to these indictments, which applies to every count except to the first count of the third indictment, is that the offence, and the subject matter of it, is not sufficiently described.

The offence alleged is in substantially the following form : that he did, on, &c., at, &c., convert to his own use 19,000 dollars of money and 19,000 of bank notes of said incorporated bank, the property of said bank, with intent wrongfully to use the same.

The charges in the indictments are substantially in the words of the statute, but are defective in that they do not specify the

number and kind of coin of which the money consisted or the number and denomination of bank bills that were taken.

An indictment charging, with time and place, that the defendant murdered *a reasonable being* within the power of the state, would not be sufficient; it must state whom he did murder by name or description.

So where chattels are the subject of larceny, even where the offence is created by statute, it is not sufficient to allege that the defendant stole the goods and chattels of another; naming him, but the *kind*, number, and value of the goods and chattels must be specified : this is a well settled and established rule of law. *Arch. Cr. Pl. & Ev.* 49–51, 52–46 ; 2 *Hale* 182–3 ; 2 *Hawk. Bk.* 4, *ch.* 25, § 74. *Stubbs' Crown Circuit* 102 ; *Forms* 278, 281.

. Sufficient certainty and specifications must be given to *individualize* the offence and to distinguish it from other offences of the like kind, so that the accused can prepare for his defence and can plead to another indictment for the same offence *autrefois acquit.* 1 *Chit. Cr. Law* 169.

In larceny the form is well settled, as one coat of the value of one dollar, two coats of the value of two dollars, and not goods and chattels of the value of two dollars, or ten dollars' worth of clothing of the value of ten dollars ; and in larceny of written instruments it is as well settled in England. The form is, " one bank note for the payment of five pounds of the value of five pounds." *Arch. Cr. Pl. & Ev.* 46 and 2203.

And in the case of *Rex* v. *Fry, Rus. & Ryan* 481, a conviction on an indictment for *stealing ten pounds in moneys numbered,* was held wrong by the twelve judges, they holding that it ought to specify the kind of coin, and number of each.

So in an indictment under the black act, which is for *killing cattle,* it was held that a conviction for killing *certain cattle of E. R.* was wrong, although in the words of the act, the indictment ought to specify what kind of cattle. *Rus. & Ryan* 258, *Rex* v. *Chalkley.*

Under the English embezzlement act, which is for " embezzling or running away with any note, bill, bond, and security, or other effects, &c.," it has been repeatedly and uni-

formly held in England that it is necessary to state specifically in the indictment the article embezzled. *Arch.* 238.

*Rex* v. *Furneaux*, *Rus. & Ryan* 335, was for embezzling one pound eleven shillings, without stating in what bills or coins it was, and the conviction was held wrong on that account only. So *Rex* v. *Flower*, 8 *D. & R.* 512; *Rex* v. *Tyers*, *Rus. & Ryan.* 402.

Since these decisions, the statute of 7 *and* 8 *Geo.* 4, *ch.* 29 (*Rus. Cr. Law* 167 and 189) has declared that, as to all except chattels, it shall be sufficient to describe them as " moneys."

This statute is a departure from the common law, and the reason on which it is founded, and the English courts have had to interfere and order in such cases *a bill of particulars.* 3 *Carr. & P.* 422, (14 *E. C. L. R.* 422) *Rex* v. *Hodgson;* 5 *Carr. & P.* 300, (24 *E. C. L. R.* 330) *Rex* v. *Bootyman.*

The decisions in other states support the common law rule. 4 *S. & R.* 194, *Stewart* v. *Com.;* 1 *Barr.* 201, *Com.* v. *Boyce,* 2 *McCord* 527, *State* v. *Thomas.*

In an indictment for obtaining goods by false pretences, it is necessary to set out *the pretences.* 9 *Cowen* 583, *Lambert* v. *The People.*

In this state, under the liquor act, it was held necessary to specify the *kind* of ardent spirits. *State* v. *Fox*, 1 *Harr.* 152.

In the Hudson Oyer and Terminer, an indictment for stealing *a bundle* of bank bills of the value of —— was held insufficient on motion in arrest of judgment.

In Hudson Oyer and Terminer, C. Justice Green presiding, an indictment under the Sunday liquor act, charging the defendant with selling and exposing for sale intoxicating liquors on the first day of the week, called Sunday, without specifying to whom, what kind, or what quantity, was held bad, and quashed.

2. The first count of the third indictment charges the defendant with converting to his own use " a promissory note." We contend that this is bad, because neither in the words or intention of the statute.

The object of the statute was to provide against embezzling money, in specie or bank bills, by officers having charge of it;

State v. Stimson.

there was great danger of such embezzlement, and but little of embezzling bonds, deeds, 'securities, or chattels, and therefore the act only provides against moneys and bank bills or notes, not mentioning promissory notes, checks, bills of exchange, scrip, bonds, deeds, or any other voucher.

The words of the act which lead to the ambiguity are "bank bills or notes." The state contends that they mean bank bills or any promissory notes; we say they mean bank bills or bank notes, being common synonyms for the same thing.

This is conclusively settled by the frequent and repeated use of the same term in other statutes, in which "bank bills or notes" are enumerated together with "promissory notes" in the same sentence. *Rev. Stat.* 269, § 45. That if any person shall steal any "bank bill or note," bill of exchange, draft, check, bond, bill, or "promissory note" for the payment of money. *R. S.* 271, § 48. Forging of any bank bill or note, check, promissory note, &c. *R. S.* 277, § 69. *R. S.* 269, § 43. The embezzling by apprentices enumerates "bank bill or note, money, goods and chattels," omitting all securities for money, as checks, promissory notes, &c.

The CHIEF JUSTICE delivered the opinion of the court.

These indictments are all founded upon the first section of the act to punish frauds committed on the incorporated banks of this state. *Rev. Stat.* 125. By that section, it is enacted, "that if any director of any incorporated bank in this state, or any cashier, book-keeper, or other officer or agent of any such bank, shall knowingly overdraw his account with the bank of which he shall be director, cashier, book-keeper, officer, or agent, for his own private use or benefit, or *shall purloin, embezzle, or convert to his own use any money, bank bill or note, the property of the said corporation, with intent to defraud the said corporation, or wrongfully to make use of the same,* in every such case the person so offending shall be judged guilty of a high misdemeanor."

All the counts of these indictments charge, in substance, that the defendant, being cashier of the Peoples Bank of Paterson, did unlawfully convert to his own use certain money, bank

bills and notes, the property of the said corporation, with intent to defraud the same. The defendant demurs, both for lack of form and of substance.

In relation to offences created by statute, the statute contains a definition of the offence. The offence consists in the commission of certain acts under specified circumstances, and in some cases with a particular intent, and an indictment founded on the statute must with certainty and precision charge the defendant with having committed or omitted the acts, under the circumstances and with the intent mentioned in the statute. *Archb. Crim. Plead.* (*1st Am. ed.*) 23.

The statute makes the offence which forms the subject matter of these indictments to consist in the purloining, embezzling, or converting to his own use, by the cashier of any incorporated bank in this state, money, bank bills or notes, the property of the said corporation, with intent to defraud the said corporation or wrongfully to make use of the same.

So far as the ingredients which compose the offence are concerned, they are all set out in the indictment literally or substantially in the words of the statute. It is averred that the defendant was the cashier of an incorporated bank in this state, incorporated by the laws of this state, and that, being such cashier at the time of the commission of the offence charged in the indictment, he did convert to his own use money and bank notes, the property of the said bank.

It is insisted, however, that although the indictment has used the language of the act, it has not described the offence which the legislature designed to punish; that the indictment should have alleged not merely that the defendant was cashier at the time of the commission of the offence, but that he committed the act charged against him in his fiduciary capacity; that the funds were intrusted to him in such capacity, and that in the commission of the offence he abused the confidence reposed in him as cashier. It is further insisted that, as the indictment does not charge an *embezzlement* by the use of a phrase of technical import, it should have charged that the defendant converted the funds to his own use, with *intent to defraud the corporation.* The objection resolves itself into this,

*viz.* that the only offence which the legislature designed to prohibit was embezzlement by the cashier of the property of the corporation with which he was intrusted.

The answer, and it would seem the decisive answer to this objection, is, that the statute does not make either of the facts, the omission of which forms the subject of the objection, an ingredient in the offence. The indictment charges the defendant with having committed the act charged under the circumstances and with the intent mentioned in the statute. If the terms used in the statute, *ex vi terminorum,* import the existence of any other ingredient or element in the constitution of the offence, the language of the indictment must necessarily have the same import. If no other element than that expressed in the statute is necessarily implied in its language, it cannot be necessary in the indictment to aver the existence of any other element.

Admitting, for the sake of the argument, that the terms of the statute are broader in their application than necessity or sound policy would dictate, it must be conceded that the introduction of the averments, alleged to be essential, into the indictment would materially narrow the prohibition of the statute, and introduce into the offence an ingredient not specified by the legislature. If the language of the statute was of doubtful import, the force of the objection might be admitted. The statute must be strictly construed. But when the terms of the act are clear and unequivocal, there is no authority by which courts may narrow its prohibition or limit its operation. It is not pretended that there is any ambiguity in the language of the statute. It is conceded, indeed, that, in order to sustain the objection, the court must alter the language of the statute, so that *embezzling* by the cashier, and *converting to his own use,* shall constitute but one offence. The plain terms of the act have a different import. And the legislature may well have considered that the public welfare and sound policy demanded that the act should be as broad in its prohibitions and as penal in its sanctions as its language plainly imports.

It is further insisted that the offence itself is not charged with sufficient certainty and minuteness; that although the

facts which constitute the crime be set forth in the words of the statute, yet the circumstances which give individuality to the crime are not stated with such certainty and precision as to apprize the defendant of the particular offence with which he stands charged.

The general rule is, that in indictments for misdemeanors created by statute, it is sufficient to charge the offence in the words of the statute. 1 *Arch. Crim. Pl.* 213, 214; *United States* v. *Mills,* 7 *Peters* 142; *United States* v. *Lacoste,* 2 *Mason* 141; *United States* v. *Lancaster,* 2 *McLean* 250; *The People* v. *Taylor,* 3 *Denio* 93. But the rule, though general, admits of many exceptions. In all cases the offence must be set forth with clearness and all necessary certainty to apprize the party accused of the offence with which he stands charged. " It doth not seem," says Hawkins, " to be always sufficient to pursue the very words of the statute, unless by so doing you fully, directly, and expressly allege the fact in the doing or not doing whereof the offence consists without the least uncertainty or ambiguity." 2 *Hawk. P. C., Book* 2, *cap.* 25, § 113.

In an indictment against a servant for embezzlement, it is not sufficient to charge that money or bank bills were delivered to the defendant by his master, and that he withdrew himself from his master with intent to defraud, but the indictment must specify the article delivered, its nature, and the name of the master. 3 *Chitty's Crim. Law* 980; *Archb. Crim. Pl.* 156. So where a statute makes the malicious killing of cattle felony, it is not enough to charge the defendant with killing cattle, but the species and the number must be stated. *Archb. Crim. Pl.* 24.

Some degree of individuality, it is admitted, must be given to the offence with which the defendant is charged. How much, is a question of some difficulty and embarrassment, in regard to which it is difficult to reconcile all the cases in the books. The certainty should be such as to identify the offence, so that the defendant may know what crime he is called upon to answer, and that he may plead the conviction or acquittal in lieu of another indictment for the same offence. But the

particularity required is not such as to screen the offender from conviction or to embarrass the prosecution with useless technicalities.

It is clear that it would not be sufficient, in an indictment upon the statute now under consideration, to charge, in the words of the statute, that the defendant did convert to his own use money and bank notes, the property of the bank. There must be some description, either of number, denomination, or value, by which the particular offence charged may be, to some extent at least, identified. The allegation of time and place does not materially aid the description, for although essential, it is not necessary that they be truly alleged. In indictments for larceny or embezzlement, it is usual to allege the species, the number, and the value of the articles stolen or embezzled. Thus in an indictment for stealing or embezzling bank notes, the familiar form of the charge is, that the defendant took nine bank notes for the payment of five dollars each, and of the value of five dollars each; or if the particular notes cannot be described, then the form of the averment is, that he took nine bank notes for the payment of divers sums of money, amounting in the whole to the sum of $500 and of the value of $500.

In one count of these indictments it is charged that the defendant unlawfully converted to his own use $19,000 of money and $19,000 of bank notes. The count is clearly bad for uncertainty. It contains no description, either of the number or the denomination of the coin or of the notes. The charge is, not that the defendant converted 19,000 coins, or coins amounting to the value of $19,000, but that he converted $19,000 of money. The design of the pleader probably was to charge the conversion of money or coin, amounting in value to $19,000, but that is not the charge as made. Can a charge of converting $10,000 in coins be sustained by proving that the defendant converted coins of other denominations to the value of $10,000? If the charge was that the defendant had converted 10,000 half dollars, that charge would not be sustained by proving the conversion of 20,000 quarters or of 50,000 dimes. It would be, to say the least, doubtful whether

the charge contained in this could be sustained by any other proof than that of converting 20,000 coined dollars, and the doubt results from the fact, that the charge itself lacks the requisite legal precision. It is doubtful whether the pleader meant to charge the conversion of 20,000 coined dollars, or the conversion of coins of other denominations amounting to $20,000. The phrase may well bear either import.

No such uncertainty could arise from charging in an indictment in England the conversion or embezzlement of £20,000 of money, because there is no such coin as a pound. It has no physical existence, but is a mere expression of value in computation, and hence the charge of stealing or embezzling twenty pounds is bad. The charge must be, that the defendant stole so many shillings or guineas, or at least coins, of the value of £20. *Rex* v. *Fry*, 1 *Rus* & *Ryan* 481.

But the term dollar is both the name of a coin and an expression of value, and hence the charge of embezzling $20,000 of coin is uncertain and vicious. It may be that the phrase used has an import which is sufficiently intelligible in common parlance; but in criminal pleading, in a charge involving personal character and liberty, the dictates of justice, no less than the rules of good pleading, require that the charges should be made with such precision as to admit of no uncertainty. This objection extends to all the counts which charge the conversion of money and bank notes, except the second count of the third indictment. That count charges the conversion of bank notes amounting to the sum of $7000. But in this count, as in the others, there is no averment of the *number* of the notes, and, what is more material, there is no averment of their *value*. The same objection extends to two counts of the first indictment. They charge the conversion of $19,000 of bank notes, without alleging that they possessed any value whatever. It is certainly true that it is not necessary to state the value of coin, because every genuine current coin of the government has a fixed value by law, of which the courts will take notice. It is also true that the offence does not depend upon the *value* of the notes embezzled or converted in violation of the statute. It is equally an offence by the statute to convert ten dollars or

ten thousand dollars. Nor does it seem to be clearly settled that it is necessary in an indictment to charge the value of personal chattels which are the subject of a misdemeanor, except when they constitute, as in larceny, an ingredient in the crime. But the subject of the offence must possess some value. To embezzle or convert the notes of a broken bank which are perfectly valueless, cannot constitute the offence contemplated in this statute. The object of the statute is to guard against frauds, and to protect the funds of the corporation against embezzlement or unlawful conversion by its officers. To embezzle or convert waste paper is not a crime within the purview of the statute.

The twenty-first section of the act of Congress of the third of March, 1825, (3 *Story's Laws U. S.* 1985) provides that if any person employed in any of the departments of the post office establishment shall secrete, embezzle, or destroy any letter, packet, bag, or mail of letters with which he shall be intrusted, or which shall come to his possession, and are intended to be conveyed by post, containing any bank note or bank post bill, he shall, on conviction, be subject to fine and imprisonment. The twenty-fourth section of the act subjects to the same penalties those who shall procure and advise or assist in doing or perpetrating any of the crimes forbidden by the act.

In indictments for violations of this statute, it has been deemed not necessary to describe either the letter embezzled or destroyed, or the notes contained in it. *United States* v. *Mills,* 7 *Peters* 138; *United States* v. *Lancaster,* 2 *McLean* 431.

Taking the notes, the court say, does not constitute the principal offence. The main offence is the violation of the sanctity of the mail : a description of the notes is therefore unnecessary. But a counterfeit note, being of no value, or a note on a bank which never existed or which is wholly insolvent, would not constitute the offence under the statute. *United States* v. *Nott,* 1 *McLean* 505.

In the present case, the conversion of the notes constitutes the principal offence. That the notes should be of some value, is an essential ingredient in the constitution of the offence. It

is clear, therefore upon principle, that in charging the conversion of bank notes, which *per se* contain no intrinsic value, the indictment must contain an express averment of value.

Upon one or the other of the grounds stated, all the counts charging the defendant with the conversion of money or bank notes are defective in form.

The first count of the third indictment charges the defendant with converting to his own use *a promissory note* made by individuals for $1000. The statute creating the offence makes it penal for the cashier of any incorporated bank to convert to his own use any *money, bank bill or note,* the property of the said corporation, with intent, &c. The offence charged in this count of the indictment is neither within the words nor the meaning of the statute. The phrase "*bank bill or note*" means bank bill or bank note. This ellipsis of the adjective is not only familiar in oral discourse, but in formal writing, and is in strict accordance with the rules of grammatical construction. The prohibition of the statute extends only to bank bills or bank notes, and not to promissory notes or other commercial paper.

The legislature have frequently used the same phraseology in a way to leave no doubt as to their meaning. Thus the act for the punishment of crimes (*Rev. Stat.* 271, § 48,) makes criminal the forging or counterfeiting of any *bank bill or note,* check, draft, bill of exchange, or *promissory note* for the payment of money. And the same act, section 69, prohibits the destroying of any *bank bill or note,* check, draft, bill of exchange, or *promissory note* for the payment of money; and in sections 43 and 45 of the same act, the same phraseology is used, manifestly with the same import.

This construction is in accordance with the manifest intent and spirit of the prohibition. The design of the statute was to make the embezzlement of coins and of bank notes, (of money, strictly so called, and of the ordinary substitute for money) either of which may with facility be purloined or embezzled by the officers of the bank. Promissory notes for the payment of money, which may be readily identified and their fraudulent embezzlement or conversion detected and proved,

are neither within the letter nor meaning of the prohibition. Checks, drafts, and other commercial paper are as liable to embezzlement as promissory notes, and would doubtless have been enumerated, had either of them been within the contemplation of the legislature.

The statute is highly penal. It makes criminal acts which are neither *mala in se* nor prohibited by the common law. It must be strictly construed, and its prohibitions be confined within the letter of the act. This count is bad in substance.

There must be judgment for the defendant upon the demurrers to all the indictments.

Justices OGDEN and POTTS concurred.