## STATE v. MALLOY.
## SAME v. ADAMS.

1. On indictment under section one of the supplement for the punishment of crimes, approved February 25th, 1863, (*Nix. Dig.* 214,*) the words "corner of a tract of land" are not equivalent to "point in the boundary of a tract of land;" nor is it sufficient to charge that it is "a cor-

*Rev., p.* 249, § 124.

ner of a tract of land of J. E. M. and other lands." It must appear
that it is a point in the boundary of separate and distinct tracts of land.

2. Where an act is only criminal if done with a particular intent, such
intent must be alleged and proved according to the terms of the statute.

3. While every sane man is taken to intend that which he does, or which
is the natural and immediate consequence of his act, yet a particular
intent, made criminal by statute, will not be inferred where there are
contradictory or explanatory facts offered in defence ; but it should be
left to the jury to find, or not, the particular intent specified in the
statute, as a question of fact.

4. If a man cut down a marked tree in a boundary line, for some alleged
primary purpose, it is a question for the jury whether he did not also
intend the collateral mischief which was the immediate and natural
consequence of the means used.

On indictment, and questions referred to this court for its
advisory opinion.

The defendants in the above two cases were separately in-
dicted and tried at the September Term, 1870, of the Court
of Oyer and Terminer of Burlington county, for a misde-
meanor, under the third clause of section one of the supple-
ment to an act for the punishment of crimes, approved Feb-
ruary 25th, 1863.   *Nix. Dig.* 214.*

The indictments are the same in form, and the facts proven
at the trial are substantially alike.

The charge is, that the defendant, " with force and arms,
willfully and maliciously did cut down and remove a certain
white oak tree [or pine tree in the other case] then and there
standing, and having and containing thereon divers marks,
made thereon for the purpose of designating a corner to a
tract of land, &c., with intent to destroy said marks made for
the purpose aforesaid, contrary to the form of the statute," &c.

On motion made to quash the indictment, the court held
that the offence, as therein charged, was indictable under the
statute.   Exceptions were taken on the part of the defendant
to the ruling of the court, and the plea of not guilty was
entered.

*Rev., p. 249.

In the case of Malloy it was proven that the tree was a large white oak, marked to designate a corner of several tracts of land; that the tree was cut down and suffered to lie as it fell; the marks were not cut out, disturbed, or obliterated. Soon after, some one cut from the body of the tree, above the marks, a piece of the timber about eight feet long; a like piece was found at the residence of the defendant soon after, and was used by him as a turf-cutter.   This, it was insisted, was sufficient evidence that he had cut the tree, with intent to destroy the marks.

In Adams' case a large pine tree, marked as a corner of the Messimore tract, was cut by the defendant, but, as he alleged in defence, under a lease or grant, which he claimed gave him the right to cut all the pine timber in that vicinity, for the purpose of making charcoal.

The court charged, among other things, " That if the jury were satisfied that the defendant cut the tree, knowing it to be marked as a corner-tree, this was enough; no express malice or willfulness need be shown—they were both to be inferred from the simple act of cutting; that it need not be proven that the intent of cutting was to destroy the marks on the tree, as every man is presumed to intend the natural results of his own acts.   If the destruction of the marks resulted from the act of the defendant in cutting the tree, the jury could not but infer such intent."   To all which charge the counsel for the defendant then and there excepted.

The jury in each case found a verdict of guilty.

Before proceeding to judgment, the Court of Oyer and Terminer aforesaid refer to this court the following questions for its advisory opinion:

*First.* Is the case set out in the indictment an indictable offence under the statute?

*Second.* Is the state bound to prove express malice or will-fulness, and if not, can such malice and willfulness be prop-erly inferred from the simple fact of cutting the tree, know-ing the marks to designate a corner were thereon?

State v. Malloy.   Same v. Adams.

*Third.* Is the state, in order to convict, bound to prove an intent to destroy the marks, and can such intent be inferred from the simple act of cutting the tree, knowing the marks are on it?

The questions were debated before the CHIEF JUSTICE, and DALRIMPLE, VAN SYCKEL, and SCUDDER, Justices, by

*Hendrickson* and *Merritt,* for the state.

*F. Voorhees,* for defendants.

SCUDDER, J.   The offence intended to be charged in this indictment is statutory, and not indictable at common law. The statute converts a private injury into a public wrong, or misdemeanor, punishable with fine and imprisonment. The rules of pleading and evidence, therefore, applicable to such cases must be used in determining the questions submitted to us by the court below. In the statement of the offence, certainty is required. The rule is thus given in *Sedg. Stat. & Const. Law* 115. "An indictment for an offence against a statute must, by the ancient rules of pleading, with precision and certainty charge the defendant to have committed or omitted the acts, under the circumstances and with the intent mentioned in the statute; and if any of these ingredients be omitted, the defendant may demur, and move in arrest of judgment, or bring a writ of error. The defect will not be aided by verdict, nor be cured by the formal conclusion that the defendant's acts are *contra formam statuti.*"

This is but a repetition and summary of what will be found in all the books. *Arch. Cr. Pl.,* 46 a, (ed. 1840;) *Arch. Cr. Prac. & Pl. (vol. I.,* 282, ed. 1860;) 2 *Hale's Pleas of the Crown* 170; 1 *Wharton's Am. Cr. Law,* § 364, &c.; *People* v. *Gates,* 13 *Wend.* 311; *People* v. *Allen,* 5 *Denio* 76; *State* v. *Gibbons,* 1 *South.* 40; *State* v. *Stimson,* 4 *Zab.* 9; *State* v.

*Drake*, 1 *Vroom* 422; *Rex.* v. *Wheatley*, 2 *Burr.* 1125. In the last case, Lord Mansfield says that in a criminal charge there is no latitude of intention to include anything more than is charged; the charge must be explicit enough to support itself.

Upon the motion to quash the indictment in the court below, it was insisted that the words of the statute which are descriptive of the offence were not set out with particularity, and therefore there was no indictable offence charged under the statute. This is the first point certified.

Our statute is recent, and is copied from the *Statute of New York, 5th ed., vol.* 3, 977.

There are no adjudged cases, that I can find, under either statute; but the interpretation is plain.

The first clause of section one is directed against the *removal of any monument, &c., erected* for the purpose of designating the corner, or any other point in the boundary line of any lot or tract of land, road, or street.

The second clause is against those who shall willfully and maliciously *deface or alter the marks* upon any tree, post, or other monument made for the purpose of designating any point, course, or line on the boundary of any lot or tract of land, road, or street.

The third clause, upon which this indictment is found, is as follows: " Or shall willfully and maliciously *cut down or remove any tree* upon which any *such marks* shall be made for *such purpose,* with the intent to destroy such marks, shall, in every such case, upon conviction thereof, be adjudged guilty of a misdemeanor," &c.

The words " such marks " and " such purpose " refer to the preceding clause, and mean marks upon any tree, made for the purpose of designating any point, course, or line in the boundary of a lot, tract of land, road, or street.

The material averments which are descriptive of the offence are thus apparent.

The tree cut must be a marked tree, designating a point, course, or line in the boundary of a lot or tract of land, &c.,

and the cutting or removal must be with the intent to destroy such marks.

This indictment charges that the defendant did cut down and remove a certain white oak tree, (pine tree in the other case,) then and there standing, and having and containing thereon divers marks, made thereon for the purpose of designating a corner to a tract of land of Isaac E. Messimore, trustee for Mary M. Messimore, and other lands situate then in the township of Washington, now in the new township of Randolph, in the county aforesaid, with intent to destroy said marks made for the purpose aforesaid, &c.  The corner designated is not stated to be in the boundary of a lot or tract of land, nor in the line of the lands named *and lands of other persons.*  We may infer that this was the intendment, but this we cannot do; the words must speak for themselves.  The essential quality that the corner is in a boundary of such lands is not stated.  Nor can we say that equivalent words are used, as in the case of *State* v. *Hickman,* 3 *Halst.* 299, for here there is not a substitution, but an omission.

The use of the word corner for point is equivalent, but the expression *corner of a tract of land* is not equivalent to *point in the boundary of a tract of land.*  It may be a corner as fenced, or divided off into fields, or merely an angle, and not necessarily in a boundary.  The term "other lands" may be lands of the same person, within an including survey which marks the true boundary lines between the person named and other persons.  The landmarks named in the statute were doubtless intended to be between separate and distinct tracts of land, and not such as merely mark convenient sub-divisions of a person's own land.  The averment omitted is, therefore, an essential ingredient of the offence, and cannot be left to conjecture.  The exactness required in criminal pleadings, especially in cases of statutory crimes, does not admit of such latitude of intention.  The bill of indictment is, therefore, defective, and the court below is so advised.

This disposes of the case, but as the court can recommit or bail the defendant anew, to answer another indictment, more accurately drawn, it may aid in the further prosecution of the case to determine the other points referred.

It is difficult to separate the questions of malice and intent, as has been done in the second and third points submitted; nor is it correct to do so where they are dependent, as in this statute. The crime consists in the particular intent with which a certain act is done, and without it no malice can be inferred, but, with it, malice is connected, and follows as a legal consequence. Thus, if a man cut down a marked tree in a boundary line, with intent to destroy the marks, no express malice need be shown—it will be inferred; but if he cut down the tree with some other manifest intent, not directly or indirectly involving a purpose to destroy the marks, then he could not be convicted under this statute. Malice and intent are both to be proved by the same kind of evidence. They may be shown by admissions, which, if believed, will be conclusive; or they may be shown by overt acts, from which they will be inferred. They can rarely be shown by more direct proof, because they are within the mind of another. To require such proof would render conviction almost impossible. Circumstantial or presumptive evidence is more usual, and often the only kind that is attainable. The universal rule applicable to such cases is, that a sane man shall be taken to intend that which he does, or which is the immediate and natural consequence of his act. 1 *Stark Ev.* 572; 1 *Arch. Cr. Pl. & Prac.* 392.

Thus, in this case, if he cut down a particular tree, the law will presume that he intended to cut that tree down, and if the immediate and natural consequence of cutting it down is to destroy certain marks upon it, it may be presumed that he intended to destroy those marks, in the absence of all contradictory or explanatory reasons for his act, showing some other purpose not involving such intent.

But this is not such an immediate and necessary consequence that it will be inferred as matter of law, regardless

of such contradictory or explanatory proof.   It is a particular and special consequence, and whether he intended such consequence or not is a question of fact for the jury.   Thus, it is said, "a man, it seems, intends that consequence which he contemplates, and which he expects to result from his act, and he, therefore, must be taken to intend every consequence which is the natural and immediate result of any act which he voluntarily does.   In this respect, the legal sense of the term intention does not differ from its usual and ordinary meaning.   It is, therefore, *a question for the jury* whether the agent did not, in attempting to attain his primary object, also intend the collateral mischief which was the necessary or even the natural consequence of the means used."   2 *Stark. Ev.* 573.

So, in the cases before us, if in the one case the primary object was to get a turf-cutter, or, in the other case, to make charcoal under an alleged right by lease or grant, the question would still be for the jury to determine, whether the collateral mischief of destroying the marks upon the tree was also intended.   This further intent might be gathered from the circumstances, among them, the utter recklessness of consequences shown in destroying a tree having this peculiar value, which was known to the offender.

The particular intent must, therefore, be left to the jury to be determined by all the facts in the case, and should not, in this case, be given to them as a legal presumption.   It must be remembered that this act is only criminal if done with a particular intent, and that the intent must, therefore, be alleged and proved according to all the terms of the statute. *Commonwealth* v. *Dana,* 2 *Metc.* 329 ; *Miller* v. *People,* 5 *Barb.* 203 ; *Commonwealth* v. *York,* 9 *Metc.* 93 ; 1 *Arch. Or. Pl. & Prac.* 119–121 ; 3 *Greenleaf's Ev.* 13 ; 1 *Stark. Ev.* 524.

In this view of the case, I think the charge of the judge below is too restrictive.   The case should be left to the jury to find, or not, the particular intent specified in the statute, as a question of fact, to be proven by the state, and deter-

mined from all the affirmative proof, and also from the con-- tradictory and explanatory circumstances shown on the part of the defence.

The court below to be advised accordingly.

BEASLEY, CHIEF JUSTICE, and DALRIMPLE and VAN- SYCKEL, Justices, concurred.

CITED *in State* v. *Crowley*, 10 *Vr.* 272.