31 N.J. Super. 51 (1954)
105 A.2d 913
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LOUIS QUATRO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 17, 1954.
Decided June 4, 1954.
*52 Before Judges EASTWOOD, JAYNE and SMALLEY.
Mr. W. Douglas Smith argued the cause for appellant.
Mr. Charles V. Webb, Jr., Essex County Prosecutor, argued the cause for respondent.
The opinion of the court was delivered by JAYNE, J.A.D.
The defendant was tried and convicted in the Essex County Court by a jury on October 17, 1952 on *53 nine indictments, six of which charged him with breaking and entering, larceny, and receiving stolen goods, one with unlawful possession of burglary tools, one with the offense of maliciously setting fire to a building, and another with breaking and entering. The defendant was thereafter charged by accusation with being a multiple offender. On October 31, 1952 he was sentenced to imprisonment in the New Jersey State Prison for terms of from 10 to 14 years for the crimes of breaking and entering, receiving stolen goods, and maliciously setting fire, respectively, with the direction that such sentences should run consecutively. Sentences for the remaining convictions, including that of being a multiple offender, were in some instances suspended and in others directed to run concurrently with the term of one of the sentences first mentioned.
The defendant has appealed from the judgments of conviction in forma pauperis, and we pause to state that his court-appointed counsel has assiduously examined the record of the convictions and on behalf of the defendant introduced six points for our consideration. We are of the opinion that Points I, II, III, IV and VI are untenable.
Point V, we believe, exhibits merit. It implicates the sufficiency of the allegations of indictment numerically identified as No. 290. The crime obviously and indeed expressly intended to be alleged is one or the other of the offenses described in N.J.S. 2A:89-2.
Prior to the enactment of this statute in our recent revision we had in this category of criminal offenses R.S. 2:109-2 which comprehended "Any person who shall willfully or maliciously burn or cause to be burned" a building, and also R.S. 2:109-3 which encompassed "Any person who shall willfully or maliciously set fire to * * * with intent to burn" a building. The former was a high misdemeanor, the latter a misdemeanor. It as apparent that the offenses were distinguished in nature and character and in their punitive consequences.
Although the offense of setting fire to a building with intent to burn it has been conspicuously upgraded to that of *54 a high misdemeanor in Title 2A, we are not persuaded by the argument of the prosecutor that the two theretofore distinct offenses were amalgamated into one. In reality they remained unconsolidated, but for reasons of convenient aggregation they were enclosed in the one section of the statute.
Therefore it seems apparent that it is a crime to "willfully or maliciously burn" a building but not a crime merely to set fire to a building in the absence of an "intent to burn" it. It is quite conceivable that under this section one might set fire to a building by thoughtlessness and inadvertence.
Succinctly stated, the point in the present appeal is that indictment No. 290 omitted the allegation of the element of an intent to burn the building. It did, however, allege that the defendant "did willfully and maliciously set fire to a certain meat processing building, the property of Fred Horns & Sons, a corporation, located at No. 63 Paris Street, in the City of Newark, in the County of Essex aforesaid, contrary to the provisions of R.S. 2A:89-2 * * *."
It is not evident that any motion was made to quash the indictment for its deficiency in that respect or any objection made at the trial to the inadequate composition of the indictment. But see State v. Flynn, 76 N.J.L. 473 (E. & A. 1909); State v. Mandeville, 88 N.J.L. 418 (Sup. Ct. 1916), affirmed 89 N.J.L. 228 (E. & A. 1916); State v. Quinn, 108 N.J.L. 467 (Sup. Ct. 1932).
It is elementary that a judgment of conviction resolves the defendant to be guilty only of that with which he is charged in the indictment, and it is fundamental that where the indictment fails to allege an offense against the law, the judgment of conviction of crime is ineffectual and deserves nullification when brought to the attention of the court on appeal. State v. Pisaniello, 88 N.J.L. 262, 265 (E. & A. 1915). It becomes plain error. R.R. 1:5-1; R.R. 2:5.
It is now the modern rule that an indictment which on its face is in all other respects sufficient will not be nullified merely because it is inartfully or awkwardly worded or disorderly in the arrangement of its allegations.
*55 But we quote from our decision in State v. Lombardo, 20 N.J. Super. 317, 321 (App. Div. 1952):
"However progressively liberal has become the legislative and judicial attitude toward the literal composition of indictments (see R.S. 2:188-5, 6, 7, 9, N.J.S.A.; Rules 2:4-11, 13) and the discretionary disinclination to quash them unless palpably defective (State v. Western Union Tel. Co., 13 N.J. Super. 172 [Cty. Ct. 1951]), yet it is basically imperative that an indictment allege every essential element of the crime sought to be charged. State v. Schmid, 57 N.J.L. 625 (Sup. Ct. 1895); State v. Solomon, 97 N.J.L. 252 (E. & A. 1922); State v. Bleichner, 11 N.J. Super. 542 (App. Div. 1951).
The omission of an essential element cannot be supplied by inference or implication. State v. DeVita, 6 N.J. Super. 344 (App. Div. 1950); State v. Lustig, 13 N.J. Super. 149 (App. Div. 1951)."
Certainly for more than a century it has been the decisional law of our State that where an act is only criminal if done with a specific intent, such an intent must be alleged in the indictment. State v. Stimson, 24 N.J.L. 9, 23 (Sup. Ct. 1853); State v. Malloy, 34 N.J.L. 410 (Sup. Ct. 1871); State v. Algor, 26 N.J. Super. 527, 535 (App. Div. 1953).
Especially is this true of criminal offenses solely created by statute. Numerous are the enactments that transform otherwise innocent and lawful acts into crimes only when committed with an intent to accomplish a publicly abominable object such as an intent to incite insurrection, to defraud, to bribe, to embezzle, and the like.
Illustrative are the sections of our Crimes Act relative to unlawful burning. For examples, the burning of a chattel, such as an old sofa, with intent to prejudice any corporation that has underwritten insurance thereon; to throw a match against a building, with intent to destroy or damage the building; to set fire to a heap of grass or hay, with intent to injure another. Obviously, in such instances the existence of the nefarious intent constitutes the centrality of the crime.
By the employment of such explicit verbiage in a statute the Legislature expressly classifies the offense as one consisting of the concurrence of an evil-meaning mind and an evil-doing hand. True, there are offenses which belong to *56 a category of another character with different antecedents and origins. During the past century an accelerating tendency has been observable to create by statutory law new offenses against the criminal law which omit any ingredient of intent.
While it was the general rule at common law that the scienter was a necessary element in the indictment and proof of every crime and formerly followed in regard to statutory crimes even where the definition did not in terms include it, there has, it is true, been a conspicuous modification of that view where it is obvious that the requirement of knowledge or intent would be inconsistent or obstructive of the manifest object and purpose of the statute.
In statutes merely declaratory of a common law crime, the elements of the common law crime will be recognized. In legislative production of statutory criminal offenses which are silent concerning the existence and concurrence of an evil or specific intent on the part of the accused, the statute must be construed to ascertain the design and purpose of the Legislature. But, where, as here, the Legislature has conspicuously inserted into the nucleus of the crime of setting fire to a building the concurrence of a specific intent to burn it, the judiciary lacks the power to eradicate any of the essential incriminating components of the crime as manifested by the words of the statute. Just so, the nucleus of the crime of setting fire to a building under the statute with which we are here concerned is the presence of the intent to burn it.
Of the many decisions pertinent in principle we recall those in State v. Boyd, 87 N.J.L. 560 (E. & A. 1915), in which the indictment failed to charge that the defendant encouraged an unlawful destruction of the building. In the recent decision rendered in State v. Algor, supra, the crime consisted in participating in a mob with the intent to inflict damage or injury to the person or property of an individual charged with a crime. The count of the indictment there under review omitted to allege that the victim was an individual charged with a crime. In both of those cases the *57 insufficiencies of the allegations were determined to be fatal to the validity of the charges.
A fertile imagination can fancy a variety of supposititious yet entirely possible occurrences in which the actual burning or the existence of an intention to burn the structure would assume substantive importance in relation to the provisions of N.J.S. 2A:89-2.
The indictment here under review neither charged that the defendant did burn the building nor that he communicated fire to it with the intent to burn it. We are not aware of the evidence adduced by the State. It could not aid the deficiencies of the indictment. This defendant appears to be a persistent violator of the criminal law. We cannot, however, punish the established principles of law in order to visit punishment upon him.
The judgment of conviction under the particular indictment identified in this appeal as No. 290 is reversed and the sentence of the defendant thereunder annulled.