GEORGE C. WILSON *vs.* THE STATE.

*Error from Dallas Circuit Court*—Before the Hon.
H. W. COLLIER.

———————

In an indictment charging the larceny of promissory notes, omission to charge the value of the notes is a material defect.

An indictment for larceny will not lie, if it appear that the articles alleged to be stolen, have been transferred, so as to create any trust, right, or property, by any consideration express or implied, or agreement. And this is a question to be considered by the jury.

The description of such notes as being of certain amounts, is not tantamount to averments of their being of that value : nor a compliance with the established rule " that indictments for larceny must state the value of the articles."

In order to render bonds, notes, &c. the subjects of larceny, they must be, at the time of taking, legally valid, and subsisting securities for the payment of money or some specific article of value.

False pretences or artifices to obtain another's property, by one entertaining a felonious design, will make larceny, provided it does not appear that a temporary trust or possession was extended to the party.

This case was decided on points reserved—and was an indictment for larceny.

The defendant was charged in two counts, with the larceny of four promissory notes. The first count set out that the defendant had feloniously stolen, taken, and carried away, four promissory notes of one hundred dollars each, the property of one Grice, and concludes, " the same being found, feloniously did steal, take, and carry away, the said sum of four hundred dollars, then and there unpaid, and contrary to the form of the statute, &c." The second count charges the larceny of four promissory notes of one hundred dollars each, made by said Grice, and payable to said Wilson, and to be-

come his property on the payment of four hundred dollars in <span>Wilson</span>
cash to said Grice, concluding, " contrary to the form of the <span>vs.</span>
statute, and against the peace and dignity of the state of <span>The State.</span>
Alabama."

On the trial it appeared, that the several promissory notes
mentioned in the indictment, had been originally executed by
Grice, for the purpose of being sold to, and discounted by
Wilson, under a previous agreement entered into between
them : that Grice after making the notes retained them a
short time, and then delivered them to Wilson, on his pro-
mise, that if Grice would accompany him, Wilson, to the place
where he kept his money, five or six miles distant, he, Wil-
son, would pay the sum agreed on ; that in conformity with
this promise, Grice accompanied Wilson, when the latter
escaped from the presence of Grice, and subsequently left the
neighborhood, having first disposed of the notes as his own
property.

On these facts, the court instructed the jury, that if they
believed Grice made the notes in question, for the purpose of
being discounted by the prisoner, then retained them, and
afterwards, at Wilson's request, delivered them to him ; and
that Wilson, at the time of such delivery, had formed the de-
sign of converting them to his own use, without paying Grice
the sum stipulated, Wilson was guilty of larceny.

On this charge, the jury found the prisoner guilty ; but the
court considering the case involving a novel and difficult ques-
tion of law, reserved the point for the consideration of the
Supreme Court.


PECK, for Plaintiff.

This conviction being for stealing notes, the first count is
bad, as it alleges, by fair construction, the larceny of money ;
at least, it does not charge the stealing of notes with suffici-
ent certainty—2 *Hale's P. C.* 182—4 *Chitty's Bl.* 306, *and
reference in note* 10.

Wilson
vs.
The State.

The count is further defective in this, that it does not conclude as is required by the constitution of Alabama—*Art.* 5, *Sec* 17. They are words of substance necessary to describe the act as a public offence. The equivalent words, "*contra pacem,*" &c. regularly conclude each count in the English precedents—3 *Chitty's Crim. L.* 733, 734, 735.

The second count is defective for not averring the notes to be due—See *Forms—Archbold,* 96—3 *Chitty's C. L.* 734. Neither does it aver their value, which is material—2 *East's C. L.* 776—4 *Bl. Com.* 307.

Notes are placed by our statute, with regard to larceny, on the same footing with other property—*Dig.* 103, s. 17. As larceny could not be committed of notes at common law, because they imported no property in possession—4 *Bl. Com.* 234—the statutes creating the offence must be founded on the presumption of a future or prospective value to their owners; which does not arise in the case of a note held by the maker himself, and not issued. The notes here had no value between the immediate parties, being obtained by fraud—(*Chitty on Bills,* 70)—and their future or contingent value in the hands of a *bona fide* holder, could not have relation back to the time of the illegal acquisition—at which time the crime must have been complete. As the notes, by the indictment, were to be sold, for the same amount of money called for on their face, and this amount being due to the obligor, from the moment he parted with the notes, was an available offset against any subsequent holder—*Dig.* 328, 329, 281. A void note cannot be the subject of a larceny.—*Philpoe's* case, 2 *East's C. L,* 593. Every public offence must also be a private wrong—4 *Bl. Com.* 5. However valueless the notes to either party, the evidence shows a sale and delivery of possession by the maker to Wilson, which destroys the specific nature of the crime charged—*Leach,* 401.

The Judge's charge was wrong, as it authorised a conviction for a mere conversion, not coupled with a felonious intent—the felonious intent being the gist of the crime—4 *Bl.*

*Com.* 232. It also assumed the value of the notes without proof, and excluded the defence which might have arisen to the prisoner from any formed design of the maker of these notes, when he disposed of them to the prisoner, to get his money without paying the notes.

In mutual fraud there could be no theft.

See, in addition to above authorities, 1 *Camp.* 376.


ATTORNEY GENERAL, *contra.*


By Mr. Justice SAFFOLD :

This was an indictment under the statute, against the prisoner, Wilson, charging him with larceny, the subject of which was four promissory notes of one hundred dollars each, being the property of Grice, the prosecutor. The prisoner was convicted in the Circuit Court of Dallas county. The case is presented for revision to this Court, on points reserved as novel and difficult, by the presiding Judge of the court below, pursuant to the authority of the statute in such cases provided.

All the questions of law arising upon a statement of the facts in evidence, and the instructions of the Circuit Judge to the jury, as well as the sufficiency of the indictment, are referred to the consideration of this court. The indictment contains two counts. The first of which, charges briefly, that the prisoner did feloniously steal, take, and carry away four promissory notes, for the payment of one hundred dollars each, and of the value of one hundred dollars each, the property of Carpenter Grice ; the said sum of four hundred dollars being then and there due and unpaid, contrary to the form of the statute, &c. without any further description of the notes, or the manner of the taking. The second count sets out the special circumstances—describing the four promissory notes to be for the payment of one hundred dollars each, due one day after date, drawn by said Carpenter Grice

**16**

on a day mentioned, "payable to the said George C. Wilson, or bearer," which said four promissory notes were to be delivered to the said George C. Wilson, and to become his property, when, and as soon as he should pay to the said Carpenter Grice the sum of four hundred dollars in cash— the said four promissory notes being yet unsatisfied, and they yet being the property of the said Carpenter Grice ; and the said George C. Wilson not having paid the said sum of four hundred dollars in cash to the said Carpenter Grice," &c. It then concludes in the usual form, that these notes the prisoner did then and there steal, take. &c. " contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Alabama."

This count contains no averment more positive as to the value of the notes charged to have been stolen.

The material facts in evidence were, that those notes were drawn by Grice, the prosecutor, to be discounted by Wilson, according to a previous understanding between them to that effect. That after the notes were drawn, the prosecutor retained them a short time in his possession, when he delivered them to the prisoner at his request, and upon his promise that if he, the prosecutor, would accompany him to where he kept his money, five or six miles distant, he would pay him the sum agreed on for the notes ; that the prosecutor accompanied him ; that the prisoner on arriving at the place, did not pay, but made excuses, and repeated assurances that he had the money in his pocket, and would pay ; that eventually he escaped privately, having previously disposed of the notes as his own.

On this state of facts, the court instructed the jury, that if the prosecutor made the notes for the purpose of being discounted by the prisoner, and retained them in his possession for a time, and afterwards, at the request of the prisoner, delivered them to him ; and the prisoner at the time of the delivery and his reception of the notes, had formed the design of converting them to his own use, without making payment,

and otherwise satisfying the prosecutor, and pursuant to this design had converted them to his own use, he was guilty as charged.

The counsel for the prisoner assigns for error,

1st. That the indictment is insufficient, and no conviction should have been had upon it.

2d. That the facts as stated in the record, if true, do not constitute the crime of larceny.

3d. The court erred in the charge to the jury.

1. By statute, paper securities, among other bonds, bills of exchange, and promissory notes, for the payment of money, or of any specific property, are made the subjects of larceny ; and it is provided, that such larceny shall be punished in the same manner as larceny of goods and chattels.[a]  This principle is not contested.  It is insisted, however, that the first court is insufficient ; that it alleges by fair construction, the stealing of money, not notes ; and that it does not conclude as required by the constitution, "against the peace and dignity of the state."[b]

[a] Aik. D. 103, sec. 17.

[b] Art. 5, s. 17.

As the first branch of this exception is peculiar to this case, depending on the particular phraseology of the concluding sentence in the court, and not likely again to occur, it is sufficient to say, that by a proper construction, with reference to the preceding description of the notes, charged to have been stolen, the words "the said sum of four hundred dollars being then and there due and unpaid," must be understood as referring to that amount secured by the notes, and not to so much cash taken.   The conclusion obviously falls short of of the constitutional requisition, which, besides its paramount authority, is subsequent to the statute, which has dispensed with the necessity of at least part of this conclusion : but, the Attorney Geneneral insisted, that this insufficiency, if any, is cured by reference to the conclusion of the second count, which is in the form required.   Whether a defect in the conclusion of one count, as this is conceived to be, can be aided by reference to another, especially if such other be also defec-

tive, is a question, the solution of which is found unimportant in disposing of this case : and as it was not particularly investigated in the argument, by reference to authorities, I decline the expression of any decisive opinion upon it.

As respects the second count, it may be observed, that the omission to charge the value of the notes, is a material defect, unaided in any manner.

The description of the notes as being of certain amounts, is not tantamount to an averment of their being of that value, nor a compliance with the well established principle, that indictments for larceny must state the value of the articles.[a] The notes may have been spurious, satisfied, or had never acquired validity ; the contrary of which is necessary to be shown, by charging them to be of a certain value, and this is a traversable fact. It is also a question, whether the circumstances under which the notes were concocted and passed into the hands of the prisoner, as charged in this count, are sufficient to constitute larceny : but, as the same question is presented by the facts as given in evidence, and the charge of the court upon them, the further consideration of the principle will be referred to that branch of the case.

2, and 3. The two latter assignments are dependent on each other, and can only be examined in connection.

They involve, as a question vital to the prosecution, the inquiry, whether the notes were sufficiently consummated and valid, as legal securities for the payment of money, to be the subject of larceny ; and whether the charge was correct in assuming, that the property in, or claim to the notes, had not been transferred and delivered to the prisoner as his own, on at least a short time given him by the prosecutor, for making the payment ; or, in considering this latter fact immaterial, one of which appears from the statement of the record.

If any one entertaining the fraudulent and felonious design of getting a hold on another's property, and converting it to his own use, resort to a false pretense or artifice to effect his object, as the prisoner appears to have done, provided in fact,

a 2 Hale's P.
C. 183.

the prosecutor did not intrust him with, not only the tempo- rary possession of the notes, but the supposed property in them, on the faith of his promise afterwards to pay them ; and if they were the proper subjects of larceny : the principle is established by numerous authorities, that such taking and conversion, would constitute larceny.

Yet it is indispensibly necessary, that where bonds, notes, &c. are the subject, they must be, at the time of receiving them legally valid, and subsisting securities for the payment of money, or some specific article of value. If these notes, for the want of consideration, or the incomplete state of the contract, had acquired no validity in the hands of any one, against the maker, no larceny could be committed in taking them ; and the principle applies with peculiar force in this state, where the makers of bonds, notes, &c. are authorised, by statute, to avail themselves, as matter of defence, of any payment, set off, or *discount*, even when sued on the same by either indorsee or bearer of such securities.[a]

The current of decisions by this court, has also been, that the word *discount* in the statute, embraces the want of conside- ration, fraud, or illegality in the creation of the contract. The principle is recognised in the English courts, that if a check be given on a verbal condition, which the drawer finds to be broken or eluded, he has a right to stop the payment ; and in such case, the instrument is but as waste paper, in the hands of another—*Weenholt* vs. *Spilta, and others.*[b] In *Philpoe's* case,[c] an indictment was preferred, under the statute of 2d *Geo.* II, which is similar to ours, concerning the larceny of notes, &c. It charged the prisoner with *robbery*, in the man- ner of obtaining the note in question from the prosecutor. The facts were, that the prosecutor had been inveigled to the prisoner's house, where he was detained by force for three hours, and compelled, under a menace of death, to draw the promissory note in question, on a stamp previously prepared, and which the prisoner attempted to get discounted the next day without success. This was held not to be robbery—that

Wilson
vs.
The State

[a] Aik. D. 328, s. 6--330, s 18

[b] 3 Camp. 376
[c] 2 East P. C. 599.

it was one continued act—so that the note was obtained by duresse—not by stealing ; and that the paper being of no value, was not the subject of robbery.   On the part of the state, the case of *Rox* v. *Walsh*,[a] is cited as an authority to sustain this conviction.   But the distinction between the two cases is marked by the fact alone, that the articles there charged to have been stolen, were *bank notes*, the validity of which were not questioned ; they were understood to be available while in the hands of the prosecutor, or any other person who might get possession of them.

a4 Taunt.273

The particular question now under consideration, was not involved in that case ; but the principle only, already noticed, relative to the motive and character of the taking, which was determined to have been felonious.   The court remarked, that whether the prisoner had, at the time he received the notes, to be immediately exchanged for gold, the *animus furandi* was the sole point on which the question of guilt turned. That " as to what had been said with regard to the parting with the property, it had in truth never been parted with at all : That that could only be done by contract, which required the assent of two minds, and there was not the assent of the mind either of the prosecutor or of the prisoner ; the prosecutor only meant to part with his notes on the faith of having the gold in return, and the prisoner never meant to barter, but to steal."   The manner of obtaining possession of the *bank notes* by the prisoner in that case was similar to that by which the present prisoner gained possession of the promissory notes, as charged by the prosecutor ; and, on the supposition that the jury trying this case, so determined the facts, the consequence would have been the same, but *for the* objection, that these notes thus fraudulently obtained, without consideration, had not yet acquired validity as available securities for the payment of the money mentioned in them.

b2 East C. L.
675.

The case of *King* vs. *Aikles*,[b] which is also cited by the Attorney General, affords more plausibility to this conviction, than any other cited in argument ; yet it will be found ma-

terially distinguishable from this.  In that case, the article
taken, was a *bill of exchange drawn by the prosecutor, and ac-
cepted by another*.  The prisoner was indicted for laceny, in
taking and carrying it away.  There an agreement having
been entered into between the prosecutor and prisoner that
the latter should discount the bill, the former delivered it in-
to his hands, to satisfy himself of the genuineness of the accep-
tance, which was done, but the prosecutor not intending to
trust the prisoner with the bill, without receiving the money,
directed his clerk to follow the prisoner to the place where
the money was to be paid, and not to leave him without re-
ceiving it ; but the prisoner *contrived* to runaway with the
bill, without making payment.  The court held the crime of
larceny to have been committed—the property therein not
being transferred before the payment of the money.  The
material distinction between that case and this is, that there
the article taken being an *accepted bill of exchange*, which, by
the law merchant, a part of the common law, was purely a
n gotiable security ; would have been available against either
drawer or acceptor, at the suit of any innocent holder who
may have received it in the usual course of trade.  The notes
on account of which, this conviction was had, are so obvious-
ly of a different nature; so clearly unavailable in the hands
of any one, until the property in them was transferred, by ac-
tual delivery on a legal consideration, (or something tanta-
mount thereto, which does not appear in this record) that we
have no hesitation in deciding that they were not in a condi-
tion to be made the subject of larceny ; and that the Circuit
Court erred in treating them as such, in the instructions to
the jury.

If this objection did not exist, we are also of opinion, that
the Circuit Court ought to have submitted the question of fact
to the jury, whether or not the claim or property in the notes
was not actually transferred to the prisoner by the agreement,
and delivery of the notes by the prosecutor, on the faith of
the prisoner's promise afterwards to pay for them.  This in-

Wilson
vs.
The State.

quiry, the instructions, as stated, precluded from the consideration of the jury. In the case of *Aikles*, to which I have referred, one of the main questions submitted by the Court to the jury, was, whether the prosecutor intended to part with the note to the prisoner without having the money paid first? the negative of which was found by the jury. If these notes, having been drawn by the prosecutor on no other consideration, were not delivered with an intention of transferring the property until payment made, until then this could acquire no validity; or if the interest in the papers, as promissory notes, was intended to have been transferred, and they were delivered accordingly on the faith of the prisoner's *promise* of subsequent payment, then the dominion over the notes was legally acquired by the prisoner, and the manner of taking and disposing of them could not have been felonious. Therefore, the Circuit Judge should have submitted the question to the jury, whether or not the prosecutor intended to part with the notes to the prisoner, without being first paid; unless he had determined the case, as we think he should have done, by adopting the principle, that in either hypothesis, the alleged larceny could not have been committed.

Under all the circumstances, as charged in the second count in the indictment, and as proved on the trial, according to the statement of the evidence; we feel satisfied the law will not sustain a future conviction, on the true facts of the case.

We therefore reverse the conviction, and direct the prisoner to be discharged.