State v. Thatcher.

Justices SCUDDER and VAN SYCKEL concurred.

---

## THE STATE v. WILLIAM THATCHER.

1  In indictments for misdemeanors created by statute, the offence may be charged either in the words of the act, or there may be such a par-ticular statement of facts as will bring the accused within its operation.

2.  If a defendant obtains property by false pretence, it is no defence to an indictment that he is able to restore such property, and ultimately intended to do so.

3.  It is not necessary that the false pretence should have been the sole cause which moved the prosecutor to part with his property. It is sufficient if the jury are satisfied that the unlawful purpose would not have been effected without the influence of the false pretence, added to any other circumstance which might have contributed to control the will of the injured party.

4.  The obtaining the prosecutor's own note or contract of suretyship by false pretences, is indictable under our statute.

---

On indictment, &c.

On case certified from the Court of Oyer and Terminer of the county of Hunterdon.

The indictment charges the defendant with having obtained of one Levi Case, the prosecutor, his signature as surety on

two promissory notes, payable to John M. Wilson or bearer, for $500 each, by falsely representing to the prosecutor, with intent to defraud him, that he, the defendant, had paid off and satisfied two notes of prior date, on which said Case was his security, when, in fact, said last-mentioned notes were not paid but were still outstanding, and Case was subsequently compelled to pay them.

The defendant was convicted at the September Term, 1870, of the Hunterdon Oyer and Terminer, and after trial and verdict the court suspended judgment, that the advisory opinion of this court might be taken, as to whether judgment should be arrested or a new trial granted.

The court charged the jury " that by force of our statute it was a misdemeanor, if the defendant obtained, by false pretences, the signature of the prosecutor to the negotiable note in question, with intent to put such note in circulation, and actually did put it in circulation, and that it did not affect the case if the defendant, at the time of procuring said signature, intended to pay the note at maturity."

And the court refused to charge the following propositions for the defendant :

1. That the variance between the false pretence averred and that proved is fatal, and the defendant should be acquitted, the allegation being that " Thatcher said he had paid off the notes," while the proof was, " he said they were paid off."

2. That to sustain the indictment it was necessary for the prosecutor to swear that the false pretence induced him to sign, and that he would not have signed but for it.

The questions reserved for the advisory opinion of the court, whether judgment should be arrested or a new trial granted, were argued before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER and VAN SYCKEL.

For the state, *J. C. Besson* and *A. V. Van Fleet.*

For defendant, *G. A. Allen* and *J. G. Shipman.*

VAN SYCKEL, J.  The correctness of the proposition that everything necessary to maintain the indictment must be set forth, and that the facts must be proved substantially as laid, will not be questioned.

It is a general rule that in indictments for misdemeanors created by positive law, the offence may be charged either in the words of the statute, or there may be such a particular statement of facts as will bring the accused within its operation.  *United States* v. *Lancaster*, 2 *McLean* 431 ; *People* v. *Taylor*, 3 *Denio* 91.

The averment here is that the defendant, with the design and intent to cheat and defraud Case of a valuable thing, did falsely pretend, knowing such pretence to be false, that the two notes were paid, and that Case was wholly discharged from liability thereon ; and by means of such false pretence, did procure said Case to become surety on two other notes, whereas, in truth, the prior notes were unpaid and outstanding, and said Case was obliged afterwards to pay them.

Conceding that a person who obtains the signature of another as such surety by false pretences, is amenable to the pains of the enactment, what essential element of the statutory offence is omitted in this indictment?

The intent to cheat is specifically charged, and the false pretence by which that guilty intent ripened into a criminal act, is expressly stated.

It is insisted that if the defendant was solvent at the time, and able to pay, no guilty intention could have existed in his mind, and that the want of an averment that he was insolvent, and that the prosecutor had not collected and could not collect from him the amount which he had paid, is fatal.

It is not of the essence of the misdemeanor that the defendant should be unable to restore that which he wrongfully obtains.  If, by a false pretence, he had procured the loan of

$500 in bank notes, his ability to refund the money would not shield him, and it would not be necessary to aver his inability to re-pay.

The crime denounced is the obtaining by false pretences.

By the cheat the prosecutor was moved to part with the thing of value, and was thereby placed in a position of jeopardy which he would not otherwise have occupied. The fraudulent intent was fully manifested in leading the prosecutor to assume a legal liability which subjected him to the contingency of loss.

The defendant's ability, or his ultimate intention to do what the law would compel him, as the principal debtor, to do, cannot save him.

The charge in the indictment is, that the defendant falsely stated that the two notes had been fully paid and satisfied by him, and that Case was discharged from liability thereon, and the proof to sustain this allegation is, that the defendant said they were all paid off. Could it truthfully be said that they were paid off if they had been taken up by some third person, and were still outstanding as valid obligations?

If they were paid off they must have been paid off by him, or by some one for him, so that he was fully apprised, by the indictment, of the facts as they were proved.

In *The People* v. *Herrick*, 13 *Wend.* 90, the variance was held to be immaterial where the indictment charged that the false representation was that the defendant had deposited $300 with one Squier, whereas the proof was that he said he had deposited $150.

It is not necessary that the false pretence should have been the sole cause which moved the prosecutor to lend his name. The influences which operate on the mind in most cases are numerous and concurrent. In this case, friendship for the defendant, and a desire to aid him in his business, operated influentially; in the case of a merchant who is induced to part with his goods, the hope of gain would be very potential. In fact it could not often happen that the prosecutor's mind

State v. Thatcher.

would yield to the false pretence exclusively, and that no other motive would impel it in the same direction.

It is sufficient, if the jury are satisfied that the unlawful purpose would not have been effected without the influence of the false pretence, added to any other circumstance which might have contributed to control the will of the injured party.

This question was fairly submitted to the jury; and, although the prosecutor did not expressly testify that the false pretence induced him to give his name, his testimony fully warranted the jury in finding that to be the fact. The authorities on this subject will be found collected in a note to section three hundred and seventy-five of the second volume of *Bishop's Criminal Law.*

The main question in the case is, whether our statute is impotent to punish the obtaining by false pretences a contract of suretyship. The note, in this case, and the paper upon which it was written, belonged to the defendant; the prosecutor merely signed his name as surety, and returned the note to the defendant. Was this signature a valuable thing within the meaning of the fifty-second section of our act respecting crimes?

This question has been discussed in cases of larceny, where the thing stolen must be of some value to the prosecutor. In *Clark's case, Russel & Ryan's C. C.* 181, the defendant was indicted under 2 *George II., ch.* 25, for stealing re-issuable notes, the property of Large & Son, while in the course of transmission to them after they had been paid. It was held that the drawers could not have any valuable property in their own notes, and the prisoner was convicted only of the larceny of the paper and stamps on which they were written.

In *Phipoe's case, 2 East P. C.* 599, some of the judges held that the prosecutor's own note could not be said to be of any value to him; others thought it was of value from the moment it was drawn, but that it never was in the possession of the prosecutor, and that it was obtained by duress, and not by larceny.

In *Walsh's case, Russel & Ryan C. C.* 215, the prisoner was charged with stealing a check drawn by the prosecutor, and the objection that the stolen instrument was of no value to the prosecutor in his own hands, prevailed, and the defendant was acquitted.

In *Vyse's case,* 1 *Moody C. C.* 218, who was convicted for receiving re-issuable notes, knowing them to be stolen, the conviction was sustained. Some of the judges doubted whether the notes were valuable securities, but all agreed that if they were not, they were goods and chattels.

In *Aickle's case,* 2 *East P. C.* 675, the conviction was for the larceny of a bill of exchange drawn by the prosecutor, and accepted by another.

In *Rex* v. *Metcalf,* 1 *Moody C. C.* 433, this point was directly adjudicated. The defendant having been convicted of the larceny of a check drawn by the prosecutor, the judge was induced, by a reference to Walsh's case, to reserve for the opinion of the judges the question whether the check in the hands of the drawer was of any value to him, and could be the subject of larceny, Lord Denman, C. J., Tindal, C. J., and Justices Gaselee, Bosanquet, Alderson, Williams, and Coleridge affirmed the conviction—Justice Littledale alone doubting. And in *Heath's case,* 2 *Moody C. C.* 33, which was in all respects like the one last cited, the authority of Metcalf's case was acknowledged without a dissenting opinion. The Supreme Court of Alabama, (*State* v. *Wilson,* 1 *Porter* 118,) ruled that the prosecutor's own note was not the subject of larceny. In reaching this conclusion, Phipoe's case was relied upon by the court, no reference having been made to the later cases of Metcalf and Heath.

In the *People* v. *Loomis,* 4 *Denio* 380, where the defendant was tried for the larceny of a receipt, Justice Beardsley said, "that, although a receipt was the subject of larceny under the New York statute, it must be made effective by being issued or delivered, before it can become a valuable private instrument. It must be, when stolen, an evidence of some right in

action, or an instrument by which a right or title to real or personal property was in some manner affected."

Though a receipt differs essentially from a promissory note, which becomes effective in the hands of a *bona fide* holder without notice, yet it must be admitted that even a receipt did affect some demand or right of the complainant. In the hands of the defendant it was *prima facie* evidence that the obligation recited in it was discharged, and it shifted the burden of proof, and it carried with it this operation from the very moment it was wrongfully taken.

In *Rex* v. *Danger, Dearsley & Bell's C. C.* 307, a case more directly in point, it was held that Danger could not be convicted under 7 and 8 *George IV., ch.* 29, for inducing the prosecutor, by false pretences, to write an acceptance on a piece of mercantile paper. It was not questioned, in this case, that the acceptance of another person would have been a valuable security within the meaning of that act, but Lord Campbell said " the thing obtained must have been the property of some one other than the prisoner. Here there is great difficulty in saying that, as against the prisoner, the prosecutor had any property in the document as a security. While it was in the hands of the prosecutor it was of no value to him."

In 9 *Wend.* 182, Stone was charged with false pretences in obtaining the endorsement of one Filly to a promissory note. The words of the New York statute are, " money, goods, or chattels, or other effects whatsoever." The offence was committed before the passage of their act making it indictable to obtain, by false pretences, the signature of any person to a written instrument. The court, Justice Sutherland delivering the opinion, held that the words " other effects whatsoever," were as comprehensive as the words " whatever kind of valuable property " in the 52d *George III.*, and that the obtaining from the maker his own note was punishable, if the defendant subsequently passed the note and made it productive. The only doubt was, whether an indictment would lie where no use had been made of the security.

In the *People* v. *Genung*, 11 *Wend.* 19, the same judge held that the effect of the later statute was to make the crime complete as soon as the signature was obtained.

In this state of judicial decision, we are free to adopt such construction of our statute as will best conform to sound rules of interpretation. The rule of strict interpretation for criminal statutes does not hinder the courts from searching for the legislative will; nor is the rule violated by giving words, in some cases, their full, or the more extended of two meanings, as the wider popular, instead of the narrow technical, one.

Cases are not wanting where some elasticity has been given to criminal statutes, in order to extend them to the mischief obviously aimed at. Thus a jail has been held to be an inhabited dwelling-house within the statute respecting arson.

*People* v. *Cotteral*, 18 *Johns.* 115, and the English statute, 7 *George II.*, *ch.* 22, against the forging of a warrant for the payment of money, was not restricted in its interpretation to commercial transactions, but extended to an order drawn by a justice of the peace on a high constable, to pay a reward. *Rex* v. *Graham*, 2 *East P. C.* 945.

In England, courts have been very astute, and justly so, *in favorem vitæ*, in their interpretation of criminal statutes, but, in this country, the tendency is to relax this strictness and refinement as inapplicable to cases of mere misdemeanor, and offences not capital. The course of legislation on this subject shows an intention to bring within the reach of the statute every kind of property.

The English statute of 30 *George II.*, *ch.* 24, which used the words "goods, wares, and merchandise," was found defective in not providing against obtaining choses in action by false pretences. This defect was remedied by 7 and 8 *George IV.*, *ch.* 29, which used the words "any chattels, money, or valuable security."

Our legislators, who framed our act in view of the early English statute, were not content with the language there used, but with the design of amplifying its operation, employed the words, " money, wares, merchandise, or other val-

uable thing." Our statute having been passed prior to 7 and 8 *George IV.*, and our law-makers having adopted more comprehensive terms than that act contains, no argument can be drawn from the fact that the English parliament, by subsequent enactment, declared it indictable to obtain by false pretence the signature of any person to a written instrument. " Valuable thing " is more comprehensive than " valuable security." Every valuable security is a valuable thing, but many valuable things are not valuable securities. Mere tangible things were not alone meant, for the words prior to valuable thing described them.

The legislature intended to denounce as a crime the obtaining by deceit of every valuable thing of a personal nature. " Other valuable thing " includes everything of value. That it embraces the promissory note of a third person, is settled in *The State* v. *Tomlin,* 5 *Dutcher* 13.

Is the maker's own note or contract of suretyship a valuable thing ? The signing of the name was an act—the name, when signed, was a thing. Was it a thing of any value ? While it remained locked up in his secretary, it was of no value to the maker, but *ev instanti* it passed out of his hands by the fraud, it became impressed with the qualities of commercial paper, and possessed to him the value which it might cost to redeem it from a *bona fide* holder. The moment Case delivered these signatures, he assumed a liability to pay $1000, contingent upon their being negotiated. Can it, therefore, be said that a paper which imposed such a risk, was of no value to the maker ? Its value to him consisted not in what it would put in his pocket, if he retained it, but in what might be taken out of his purse by the delivery of it to the defendant.

This view was evidently taken in *The Commonwealth* v. *Rand,* 7 *Metcalf* 475, which was a case of larceny of bank notes which had been redeemed by the bank, in which Chief Justice Shaw said " the bank was the owner of the paper, which was of some value to be re-issued ; but a consideration of more importance is, that notwithstanding the bills were

stolen, yet, on being passed to a *bona fide* holder, the bank would be bound to pay them as if they had not been redeemed. The injury to the bank, therefore, is the same."

Under the contrary view, the fraud-doer, instead of obtaining from his victim, by false pretences, his bank notes, may defy the law, by resorting to the simple device of getting his check and drawing the money at bank, or he may practice deception with impunity upon a bank by drawing their own circulating notes. Under our humane system of criminal law, judicial ingenuity should not exhaust its resources to reach an interpretation in favor of the wrong.

In common and legal understanding, the language of our act is broad enough to comprehend the maker's own negotiable note or contract of suretyship, by which a piece of paper, before worthless, is stamped with an exchangeable value. The policy of the law applying with equal force to such securities, there is no rule of interpretation which forbids us to carry the enactment to the extent of the mischief.

The suggestion that, since the practice of endorsing commercial paper has become so frequent, it will lead to dangerous results to hold this to be an indictable offence, is not entitled to much consideration, in view of the fact that there has hitherto been no abuse of the law in its application to the numberless daily transactions in the community, which are unquestionably within its terms.

In my opinion, the court below should be advised to deny a new trial.

The CHIEF JUSTICE and Justice SCUDDER concurred.

CITED *in State* v. *Crowley*, 10 *Vr.* 269; *State* v. *Halsted*, 10 *Vr.* 411; *State* v. *Startup*, 10 *Vr.* 428.