100 N.J. Super. 407 (1968)
242 A.2d 42
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ELIZABETH ALLEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 4, 1968.
Decided April 18, 1968.
*409 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Samuel C. Inglese (assigned counsel), argued the cause for appellant.
Mr. William D. Danberry, Assistant Prosecutor, argued the cause for respondent (Mr. Edward J. Dolan, Middlesex County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Defendant appeals from a conviction of the crime of obtaining property under false pretenses. The indictment in substance presented that defendant, intending to cheat and defraud Sears Roebuck & Company ("Sears" hereinafter), falsely represented herself to Sears to be "one Jane Blackwell, the wife of one Joseph Blackwell," and that by means of that false pretense she obtained from Sears a certain portable television set with the said fraudulent intent.
The statute here allegedly violated was N.J.S. 2A:111-1. For present purposes it should be emphasized that it requires that the false statements shall have been made with intent to cheat or defraud the person from whom the property, etc., is obtained and also that the false statement shall have been the "means" by which the property is obtained, i.e., that the defrauded person shall have *410 relied upon the false pretenses in parting with the property. For the essentiality of the element of reliance see State v. Kaufman, 31 N.J. Super. 225, 229 (App Div. 1954), modified on other grounds, 18 N.J. 75 (1955); State v. Lamoreaux, 13 N.J. Super. 99, 103 (App. Div. 1951); State v. Hubschman, 133 N.J.L. 520, 522, 523 (Sup. Ct. 1946); State v. Thatcher, 35 N.J.L. 445 (Sup. Ct. 1872). The jury must be shown "that the unlawful purpose would not have been effected without the influence of the false pretense," although this if shown will be sufficient notwithstanding the existence of other influences cooperating to induce the injured party to part with his property. Id., at pp. 448-449.
Defendant contends there was error in denying the motion for acquittal at the end of the State's case for failure of proof of essential elements of the crime charged. On review of the denial of such a motion the sufficiency of the State's case cannot be aided by what is adduced on defendant's case, State v. Fiorello, 36 N.J. 80, 86-87 (1961), although the State is entitled on such a motion to the benefit of all of its favorable testimony and the favorable inferences which a jury might reasonably draw therefrom. Id., at p. 87.
The State's proof was as follows. On May 22, 1964 defendant Elizabeth Allen accompanied by a man, visited an outlet of Sears in Perth Amboy. She purchased a portable television set ($139.95), using a Sears credit card (charge plate) imprinted with the name Joseph Blackwell. Defendant signed that name on the sales slip. She was not asked by the salesman, one Hamerling, to identify herself, and she did not volunteer the information, but she gave Blackwell's address on request. She was allowed to take the set after the salesman phoned the credit department and obtained approval. The store ordinarily relied upon possession of the card, an authorized signature and verification from the credit department of the address given by the card holder. Hamerling also testified the store "normally issued *411 two cards for husband and wife's use. It can be issued in one name with two authorized signatures."
Defendant returned to the Perth Amboy store the next day, May 23, 1964, to exchange the television set purchased the day before for a different (and more expensive, $149.65) model. She said the first set's reception was unsatisfactory. She was accompanied this time by two men.
George R. Smith testified for the State that it was he, a salesman and department manager of Sears, who processed and handled the exchange transaction. He said:
"Well, first of all, she identified herself to me as Mrs. Blackwell and she gave me the receipt which she had validated the day before and after verifying the fact that the set was the proper number and the price was correct, I proceeded to make out a refund check. In other words, I refunded the money on the original sale and then she picked an alternate set for which I rewrote another sales slip."
However, it is clear that the transaction did not actually involve any cash refund. The defendant simply got a second set in place of the first, and there was a net increase of $9.70 in the debit on the Joseph Blackwell charge account.
Smith testified that defendant signed for the exchange; she wrote "Joseph Blackwell" on the new sales slip after presenting the Blackwell credit card which was used to make a charge plate imprint on the new sales slip. Smith echoed Hamerling's testimony to the effect that it was permissible and common for the wife of a charge account holder to sign for a credit transaction  either by signing her husband's name (the named charge account holder) or her own name. The signature as imprinted on the plate is preferred.
Charles Moser, the Sears credit fraud investigation manager, was the State's last witness. He testified that early in 1964 a charge account application bearing the name "Joseph Blackwell" was received, and two credit cards were promptly issued in that name (each card with the same name  one card to be used by the applicant's wife) and sent to the *412 applicant's address. "Store policy" is that only the named individual and his wife may use the card.
A credit investigation of Joseph Blackwell, 151 Monroe Avenue, Rahway, was commenced by Moser in June 1964, as nothing had ever been paid on the account in question although several articles had apparently been purchased thereon. In the course of his investigation Moser visited the Rahway address in August 1964 and was greeted at the door by defendant, who, he claimed, first identified herself as "Mrs. Smith or Mrs. Jones, * * * whichever one you like." She then said:
"I'm the sister of Jane Blackwell and she told me you were coming. * * * She told me to look at the sales slips and if they were her signature to tell you that she would pay the bills because she is in the hospital having a baby."
Defendant, said Moser, confirmed that the signatures on the sales slips were her "sister's." Moser went to the hospital to see if there was a Mrs. Blackwell in the maternity ward but did not testify as to what he found. He later said he never found a Mrs. Joseph Blackwell anywhere. He also testified he went to a place that he "thought to be the place of business of one Joseph Blackwell." He was not allowed to say what he learned there because hearsay. He did testify he never saw any Joseph Blackwell. He did not indicate whether the Rahway address was a single or two-family dwelling. Aside from the foregoing, the revealed extent of his investigation was only as to an inquiry of the telephone company and the "credit bureau or the real estate bureau or something." Moreover, his investigation began in June 1964. There was nothing indicated concerning any investigation, or the results thereof, as to the Blackwells' location as of May, when the television set was purchased, or earlier, when the account was opened.
The foregoing are the proofs on the basis of which the correctness of the trial court's denial of the motion to acquit at the end of the State's case must be adjudged. As we have *413 concluded that such proofs were deficient to establish a prima facie case of guilt of the specific crime charged, within the formula of State v. Fiorello, supra, the defendant's testimony is irrelevant to our conclusion, and we summarize it for informative purposes only.
Defendant testified in her own behalf that she had signed the two sales slips, but that she had done so for her stepbrother, Joseph Blackwell, who, present at the store with her on both occasions, had temporarily left the sales area when the time for signing arrived  on May 22, 1964 to visit the auto parts department, and on May 23, 1964 to go to the toilet. The purchase and exchange were made, she said, by Blackwell, and she signed the name "Joseph Blackwell" for him in his temporary absence, at the behest of the impatient salesmen. Defendant insisted she told the salesmen that the purchaser, Joseph Blackwell, was her brother.
Defendant testified that at the time of the 1964 purchase she and her husband lived in a two-family house at 151 Monroe Street in Rahway; Blackwell, his wife and child, lived on one floor, and she and her husband lived on the other. She and her husband now live on Grant Avenue in Jersey City and Blackwell and his family have removed to Alabama. Defendant does not know their address and has not heard from them since August 1964.
Defendant admitted Moser called at the house and said he asked for the Blackwells and that she told him they were not home, identifying herself as Elizabeth Allen. When he asked her about the accounts she said she could not help him and could not identify the signatures, and told him he would have to return when they were there. He did not ask where either of them was that day nor did she tell him.

I
In considering whether a prima facie case was presented at the end of the State's evidence we must be mindful that the statute in question is not designed for or to be used *414 as a means of collecting commercial accounts, see State v. Lamoreaux, supra (13 N.J. Super., at p. 102). Second, we must not permit ourselves to be tolerant of obvious deficiencies in a criminal prosecution because of any visceral reaction that defendant's conduct was reprehensible in some vague respect not identifiable by fair inferences from the proofs with the precise requirements laid down by the law for conviction of the specific crime laid in the indictment. See State v. Campisi, 23 N.J. 513, 518-520 (1957); State v. Croland, 54 N.J. Super. 594, 602-603 (App. Div. 1959), affirmed 31 N.J. 380 (1960); State v. Dancyger, 51 N.J. Super. 150, 160 (App. Div. 1958), reversed, other ground, 29 N.J. 76 (1959). Specifically, Mrs. Allen was not charged with or tried because of any fraudulent pretense in opening or maintaining the credit account or participating therein, or using the credit card per se, or concealing the whereabouts of the Blackwells in August 1964 or previously. The false pretense charged was solely her statement, the second time she came to the store, that she was "Jane Blackwell" the "wife of Joseph Blackwell," i.e., Mrs. Joseph Blackwell; and that by means thereof she obtained a television set from the company with fraudulent intent.
We address ourselves first to the adequacy of the proof to establish the necessary element of reliance; see the authorities cited above. The State had to show that defendant's alleged statement, when she went to exchange the first television set for the second  that she was Mrs. Joseph Blackwell  was the or a material factor upon which Sears relied in releasing the set to her. State v. Thatcher, supra. The witness who effected the exchange on behalf of Sears did not say or imply in any way that he would not have allowed the second set out of the store unless the defendant first identified herself as Mrs. Blackwell. He did not ask her who she was. While there was testimony that it was company policy that only the named holder or his spouse could use the card, it was not fairly inferable that *415 the store's fixed practice is never to let an item go out on charge unless the holder of the card states specifically that he or she is the person named thereon or the spouse of that person. Thus no reasonable legitimate inference is possible from the State's evidence that Mr. Smith would have withheld the new set (worth only about $10 more than the set Mrs. Allen already had obtained free of any charged false pretense and returned in the exchange) unless defendant first expressly affirmed that she was Mrs. Blackwell. The testimony was not that the salesman asked her who she was; merely that she identified herself in that manner on her own initiative at the outset of the transaction; and it is plain that the salesman's sole reliance in effecting the exchange was defendant's production of the set, the credit card and the sales slip of the prior day's transaction. Having validated the latter, Mr. Smith put the exchange through.
It is highly significant in this regard that the salesman who effected the initial sale received no identification by defendant of herself as "Jane Blackwell, wife of Joseph Blackwell," or as Mrs. Blackwell, nor did he ask for any. He relied solely on her possession of the card, her furnishing the Monroe Street address, her signing of the Blackwell name, and his inquiry of the credit department.
Upon inquiry on the point by the court at oral argument, the State with commendable candor indicated that it could point to no evidence in the case to justify the inference that the salesman would not have let the set go the second day absent defendant's volunteered representation of herself as Mrs. Blackwell.
For all the reasons stated, we are constrained to hold that it could not, with reason, be found beyond a reasonable doubt that there was any reliance by the company in the "but for" sense in parting with any merchandise on the gratuitous introduction of herself the second day by Mrs. Allen as Mrs. Blackwell. This called for granting the motion of acquittal at the end of the State's case.

*416 II
In this portion of the opinion the writer speaks only for himself.
I am convinced that reversal should rest on the additional ground that at the end of the State's proofs there was no reasonable basis for a fair inference of fraudulent intent by defendant in making the false pretense of her identity. The set was being taken on a credit charge account of Joseph Blackwell. There was no proof by the State that, as of the time of purchase of the television set, or previously, this was not a regular and subsisting account of one Joseph Blackwell, nor, a fortiori, that defendant did not so believe at the time. Defendant was entitled to the presumption of innocence all during the trial as to all necessary elements of the offense, including fraudulent intent. So far as anything to the contrary appeared in the State's case, she could well have been lent the credit card by Blackwell (whether or not consonantly with the store's "policy") to buy the set, with no expectation or intention on her part that the charge-card holder would not pay the account when it came due. That hypothesis of innocence of fraudulent intent cannot be taken to be refuted by her variant defensive testimony that it was actually Blackwell who was buying the set as this is not legally available to buttress the State's case on the initial motion for acquittal. In any case, if that testimony is true, it clearly refutes any guilt. If it is false, it still does not supply the missing indicia of intent that the company not be paid on the account.
Nor is the hypothesis of innocence as to intent fairly refutable by defendant's conduct in August 1964, three months after the allegedly fraudulent transaction here in question. Her dissembling at that time may well have been merely the product of a then desire to help her brother avoid responsibility or perhaps because of her fear of involvement in civil liability for the set, knowing then that it had not been paid for. Those circumstances are not at all inferential *417 of an intent on her part on the day in May 1964 when she got the set that the company should not be paid for it on the charge account in due course; certainly not to such degree as would entitle a jury reasonably to so find beyond a reasonable doubt. Indeed, our cases appear to indicate, insofar as the sufficiency of circumstantial evidence to establish guilt of this crime is concerned, that the State's evidence must generate inferences of the necessary elements of the crime "grounded in strong probability" in order to survive a motion for acquittal. State v. Trypuc, 53 N.J. Super. 6, 12 (App. Div. 1958); State v. Lamoreaux, 13 N.J. Super. 99, 103 (App. Div. 1951) (per Brennan, J.A.D.).
There should have been a directed acquittal on this ground, independently of that discussed previously herein.

III
We are not in accord with defendant's pro se argument that she was prejudiced in respect of identification in court by the State's witnesses because she and her husband were the only Negroes in court during the trial. She does not deny that she was the person with whom all three of the Sears' employee-witnesses dealt as recounted in their testimony.
Judgment reversed.
LABRECQUE, J.A.D. (concurring).
I would reverse, but solely upon the ground that the proofs were inadequate to establish that defendant's false representation was operative in inducing Sears to part with the television set on the day of the offense. I join in Judge Conford's opinion on this point. Evidence is totally lacking from which the jury could have found that such representation was relied upon by Sears and induced it to permit defendant to take the set from the store. Smith, the saleman and department manager who handled the transaction, is silent on the subject. *418 When defendant "purchased" the first television set the day before, she had been permitted to take it from the store without any questioning as to her identity, notwithstanding that she had signed the name "Joseph Blackwell," a name which she obviously did not bear.
I would hold that Moser's testimony as to defendant's subsequent conduct was adequate to support a finding of fraudulent intent on her part.
COLLESTER, J.A.D. (dissenting).
I am unable to agree with my brothers that there was no proof that Sears, Roebuck & Company relied upon defendant's false representations when she acquired the television set and that there was no evidence that defendant intended to cheat and defraud the company.
The evidence showed that when a credit card was issued by the company for use by a husband and wife it would normally bear only one name, usually that of the husband. The wife could use the card by giving her address and signing either her own name or her husband's name on the sales slip. Hamerling, Smith and Moser, who were employed by the company, all testified that no one could use the card except the cardholder or his wife.
The test to be applied in determining the sufficiency of the proof on a motion to acquit is whether the evidence viewed in its entirety and giving the State the benefit of all of its favorable testimony and all of the favorable inferences which can reasonably be drawn therefrom is such that a jury could properly find beyond a reasonable doubt that the defendant was guilty of the crime charged. This test governs not only the trial judge's consideration of the motion, but also appellate review of his ruling.
Here defendant falsely represented that she was the wife of Joseph Blackwell, the credit card holder, and signed his name to the sales slip. Since only the card holder or his wife could use the credit card to obtain merchandise the jury could properly find that the company relied upon the defendant's *419 false representation when it permitted her to take the television set.
I am also satisfied that the State presented sufficient evidence of the defendant's fraudulent intent. The intent to cheat or defraud at the time property is obtained by means of false representations involves proof of the condition or state of mind of the accused. Such proof ordinarily can only be established by the words, acts and conduct of the accused. It is relevant to show the conduct and declarations of the accused subsequent to the commission of the crime when such conduct indicates a consciousness of guilt, or is inconsistent with innocence, or tends to establish the intent with which the act was committed. 1 Wharton's Criminal Evidence (12th ed. 1955), § 201, pp. 404-405.
In the instant case there was evidence that when Charles Moser, a company investigator, went to defendant's home to inquire about the nonpayment of the Blackwell account the defendant concealed the fact that she was the person who had used the credit card, had signed Blackwell's name to the sales slip, and had obtained the television set. She informed Moser that she was Jane Blackwell's sister and that her sister had told her a Sears' representative would call at the house about the account. She said Jane Blackwell had asked her to look at the sales slips and if they bore her sister's signature her sister would then pay the bill. When shown the slips by Moser she falsely identified the signature as her sister's.
On the basis of such evidence the jury could properly conclude that defendant intended to cheat and defraud the company when she obtained the television set as a result of her false representations.
In my opinion the trial court did not err in denying the motion for acquittal and submitting the issues for determination by the jury.
I would affirm.